**SAUL EWING LLP**

A Delaware LLP

750 College Drive East, Suite 100

Princeton, NJ  08540

(609) 452-3100

Attorneys for Defendants Peter L. Kohnstamm and Elizabeth K. Ogden

**CONRAD, O'BRIEN, GELLMAN & ROHN P.C.**

1515 Market Street, 16th Floor

Philadelphia, PA  19102

(215) 864-9600

Attorneys for Defendants Abby F. Kohnstamm and Sarah F. Kohnstamm

| | | |
|---|---|---|
| SENSIENT COLORS INC., | : | UNITED STATES DISTRICT COURT |
| | : | SOUTHERN DISTRICT OF NEW YORK |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No.  07 CIV 7846 (LAP) |
| | : | |
| ABBY F. KOHNSTAMM; PETER L. | : | CIVIL ACTION |
| KOHNSTAMM; SARAH F. | : | |
| KOHNSTAMM; ELIZABETH K. | : | (Filed Electronically) |
| OGDEN; RICHARD L. OGDEN; | : | |
| THOMAS H. OGDEN; JOHN DOE | : | |
| INDIVIDUALS 1-20 (fictitious | : | |
| names); and ABC COMPANIES 1-20 | : | |
| (fictitious names), | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................. ii

I    INTRODUCTION .........................................................................................1

II.   FACTUAL BACKGROUND ..........................................................................3

III.  THE LEGAL STANDARD ON A MOTION TO DISMISS ...........................6

IV.  LEGAL ARGUMENT....................................................................................7

    A.  The Amended Complaint Fails to State any Viable Claims Because Plaintiff Cannot Pierce Its Own Corporate Veil as a Matter of Law ....................................7

    B.  Even If Self-Piercing Were Legally Permissible, Which It Is Not, Plaintiff's Amended Complaint Fails to Allege Facts Sufficient to Justify the Extraordinary Remedy of Piercing the Corporate Veil............................................9

        1.  Plaintiff Has Wholly Failed To Allege Facts Sufficient to Establish "Domination" by the Defendants Over H. Kohnstamm in Connection with the 1988 Transaction – The First Prong of the <u>Morris</u> Test........................................................................10

        2.  Plaintiff Has Wholly Failed To Allege Facts Sufficient to Establish Any "Fraud or Other Wrongful Conduct" Committed by Defendants and Causing Injury to Plaintiff – The Second Prong of the <u>Morris</u> Test..........11

    C.  Plaintiff's CERCLA Claims Fail As A Matter of Law (Counts I and II) ..............12

    D.  Plaintiff's New Jersey Spill Act Claims Fail As A Matter of Law (Counts III and IV)..................................................................................................15

    E.  Plaintiff's Civil Conspiracy Claim Fails As A Matter of Law (Count IX)............17

    F.  The Remaining Counts of Plaintiff's Amended Complaint are Derivative Claims That Fail as a Matter of Law Because the Defendants Have No Independent Liability on any of Plaintiff's Other Claims (Counts V, VI, VII and VIII) ...............................................................................17

    G.  Plaintiff Is Collaterally Estopped From Asserting Any Claims Based on a Veil Piercing Theory Based Upon The Outcome of the New Jersey Action ................18

V.   CONCLUSION.............................................................................................21

i

# TABLE OF AUTHORITIES

### FEDERAL CASES

Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130 (2d Cir. 1997)...................10, 11

Analytical Measurements, Inc. v. Keuffel & Esser Co., 816 F. Supp. 291 (D.N.J. 1993) ............16

Baidas v. Jenifer, 123 F. App'x. 663 (6th Cir. 2005) ....................19

Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998) ...........................................14, 15

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)...........................................6, 7

Coast Mfg. Co. v. Keylon, 600 F. Supp. 696 (S.D.N.Y. 1985) ......................................7

Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc., 153 F. App'x. 749 (2d Cir. 2005), cert. denied, 127 S. Ct. 2995 (2007)...........................................13

Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991).........................20

Delaney v. Town of Carmel, 55 F. Supp. 2d 237 (S.D.N.Y. 1999).........................13, 15

Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp., 833 F.2d 418 (2d Cir. 1987)...................11

Fishbein Family P'ship v. PPG Indus., Inc., 871 F. Supp. 764 (D.N.J. 1994) ..............16

Freeman v. Complex Computing Co., 119 F.3d 1044 (2d Cir. 1997) ............................9

In re Adelphia Commc'ns. Corp., 322 B.R. 509 (Bankr. S.D.N.Y. 2005) ......................7

In re Thomson McKinnon Secs., Inc., 149 B.R. 61 (Bankr. S.D.N.Y. 1992)..................8

Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 263 F. Supp. 2d 796 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir.), cert. denied, 545 U.S. 1129 (2005) ....................18

Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86 (2d Cir. 1997).........................19

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)..............................................7

Kahn v. NYU Med. Ctr., 2007 WL 2000072 (S.D.N.Y. July 10, 2007) .........................7

Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d 91 (E.D.N.Y. 1998), aff'd, 242 F.3d 366 (2d Cir. 2000)...........................................9

Matosantos Comm. Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203 (10th Cir. 2001)..................19

New York State Elec. & Gas Corp. v. First Energy Corp., 2007 WL 1434901 (N.D.N.Y. May 11, 2007) ...................................................................................................18

Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries, 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) ..............................................................11, 12

Okoro v. Bohman, 164 F.3d 1059 (7th Cir. 1999) ........................................................19

Pereira v. United Jersey Bank, N.A., 201 B.R. 644 (S.D.N.Y. 1996) ...........................18

Pfohl Bros. Landfill Site Steering Comm. v. Browning-Ferris Indus. of N.Y., Inc., 2004 WL 941816 (W.D.N.Y. Jan. 30, 2004) ..................................................................13

Puma Indus. Consulting, Inc. v. Daal Assoc., 808 F.2d 982 (2d Cir. 1987)....................7

Sahu v. Union Carbide Corp., 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006) ..............10

Sazerac Co. v. Falk, 861 F. Supp. 253 (S.D.N.Y. 1994) ..............................................16

State of New York v. Nat'l Servs. Indus. Inc., 352 F.3d 682 (2d Cir. 2003) .................13

State of New York v. Shore Realty Corp., 759 F.2d 1032 (2d Cir. 1985)......................13

Thrift Drug, Inc. v. Universal Prescription Adm'rs., 131 F.3d 95 (2d Cir. 1997)..........12

Truglia v. KFC Corp., 692 F. Supp. 271 (S.D.N.Y. 1988), aff'd, 875 F.2d 308 (2d Cir. 1989) ...................................................................................................................10

United States v. Bestfoods, 524 U.S. 51 (1998) ...............................................13, 14, 15

United States v. Green, 33 F. Supp. 2d 203 (W.D.N.Y. 1998).......................................14

United States v. Wallach, 935 F.2d 445 (2d Cir. 1991)..................................................14

Washington v. U.S. Tennis Ass'n, Inc., 290 F. Supp. 2d 323 (E.D.N.Y. 2003).............19

Wm. Passalacqua Builders, Inc. v. Resnick Devs. South, Inc., 933 F.2d 131 (2d Cir. 1991) .................................................................................................................9, 11

World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514 (S.D.N.Y. 2001).................17

### STATE CASES

Corcoran v. Frank B. Hall & Co., 545 N.Y.S.2d 278 (N.Y. App. Div. 1989)................................8

Harris v. Stony Clove Lake Acres Inc., 608 N.Y.S.2d 584 (N.Y. App. Div. 1994).......................7

Morris v. New York State Dep't of Taxation & Fin.,
603 N.Y.S.2d 807 (N.Y. 1993) ...................................................................9, 10, 11, 12, 14, 15

Nat'l Amusements, Inc. v. New Jersey Tpk. Auth., 619 A.2d 262 (N.J. Super. Ct. Law
Div. 1992) ...........................................................................................................................18

State v. Arky's Auto Sales, 224 N.J. Super. 200 (N.J. Super. Ct. App. Div. 1988) ...............16, 17


### FEDERAL STATUTES

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")
42 U.S.C. § 9601(a) ...........................................................................................................13

CERCLA, 42 U.S.C. § 9613(f)(1) .............................................................................................12

CERCLA, 42 U.S.C. § 9613(g)(2)..............................................................................................12


### STATE STATUTES

Joint Tortfeasors Contribution Act, N.J. Stat. Ann. § 2A:53A-1, et seq. .....................................17

Environmental Cleanup Responsibility Act ("ECRA"), N.J. Stat. Ann. § 13:1K-6 et seq. ...........4

ECRA, N.J. Stat. Ann. § 13:1K-8(b) ...........................................................................................4

N.J. Admin. Code § 7:1E-1.6.......................................................................................................15

New Jersey Spill Compensation and Control Act,
N.J. Stat. Ann. § 58:10-23.11 et seq. ...................................................................................15


### OTHER AUTHORITIES

18 Am. Jur. 2d Corporations § 46 (1985) ....................................................................................8

18A Charles Alan Wright et al., Federal Practice & Procedure § 4436 ......................................19

## I.    <u>INTRODUCTION</u>

Defendants Abby F. Kohnstamm, Peter L. Kohnstamm, Sarah F. Kohnstamm and Elizabeth K. Ogden ("Defendants") submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint of Plaintiff Sensient Colors, Inc. ("Sensient Colors" or "Plaintiff"), formerly known as H. Kohnstamm & Co., Inc. ("H. Kohnstamm"). This case involves the highly unusual situation of a New York corporation seeking to pierce *its own* corporate veil, for *its own* benefit, in order to evade corporate environmental liabilities by shifting them to its own former minority shareholders.[1]

Plaintiff's claims here are virtually identical to claims it asserted in 2005, in a Third Party Complaint filed in an action in the Superior Court of New Jersey (the "New Jersey Action"). In the New Jersey Action, Plaintiff (a) made the same factual allegations, (b) alleged essentially the same causes of action, and (c) named as third-party defendants various former minority shareholders of H. Kohnstamm, including the four moving parties here.

Third-party defendants in the New Jersey Action (including the moving parties here) moved to dismiss Plaintiff's claims against them for lack of personal jurisdiction and for failure to state viable claims for relief. These issues were briefed extensively and argued, including briefing and argument on Plaintiff's position that personal jurisdiction over the third-party defendants was available "in the circumstance of piercing the veil." <u>See</u> Transcript of February 3, 2006 Hearing before the Honorable Charles A. Little, J.S.C. at 20 ("2/3/06 Hearing Transcript") (Lampert Dec., Exhibit A). Following oral argument, the New Jersey Superior

---

[1]    According to Plaintiff's Amended Complaint, Universal Foods Corporation ("Universal Foods") acquired all the issued and outstanding stock of H. Kohnstamm in 1988 (referred to in the Amended Complaint as the "1988 Transaction"). H. Kohnstamm thereby became a wholly-owned subsidiary of Universal Foods, which changed the subsidiary's name to Warner-Jenkinson Co., Inc. and thereafter to Sensient Colors. Thus, the Plaintiff, Sensient Colors, is the same New York corporation as H. Kohnstamm. <u>See</u> Amended Complaint ¶¶ 5, 16, 18.

Court dismissed all of Plaintiff's claims, ruling that Plaintiff had failed to allege facts sufficient to pierce the corporate veil, and that the Court lacked personal jurisdiction over the third-party defendants in New Jersey.  In doing so, the Court specifically opined that there were simply "no facts" and "no proof" supporting Plaintiff's claim that "the corporation was a mere instrumentality or alter ego of the shareholders," or that "the shareholders abused the corporate form to . . . perpetrate . . . a fraud, or otherwise to circumvent the law," as would be required in order to pierce the corporate veil.  See 2/3/06 Hearing Transcript at 32-33 (Lampert Dec., Exhibit A); Amended Order of March 22, 2006 (Lampert Dec., Exhibit B).

Plaintiff did not appeal the dismissal of its claims in New Jersey.  Instead, Plaintiff thereafter filed at least two more lawsuits against subsets of its own former minority shareholders, on grounds virtually identical to those asserted by Plaintiff in the New Jersey Action -- one in federal court in Minnesota in July 2007, and the other here.  As a result of the New Jersey Superior Court's rejection of Plaintiff's attempt to pierce its own corporate veil, the doctrine of collateral estoppel forecloses Plaintiff's claims in this matter -- all of which again depend upon Plaintiff's ability to pierce its own corporate veil.

In the Amended Complaint here, Plaintiff again seeks to shift liability to its former minority shareholders based upon the following progression of events -- which are identical to the events alleged in the New Jersey Action: (a) Plaintiff (then known as H. Kohnstamm) transferred ownership of its manufacturing plant in Camden, New Jersey to a then-wholly owned subsidiary, General Color Company ("General Color"); and (b) the stock of H. Kohnstamm was acquired by Universal Foods, but before this acquisition was completed, (i) ownership of the stock of General Color was spun-off to certain soon-to-be former minority shareholders of H. Kohnstamm, and (ii) Plaintiff (again, then H. Kohnstamm) submitted certain correspondence and

affidavits to the New Jersey Department of Environmental Protection ("NJDEP") seeking a determination that the requirements of the New Jersey Environmental Cleanup Responsibility Act ("ECRA") were not applicable to this series of events (referred to herein as the "ECRA Filing").

This ECRA Filing is the entire foundation of Plaintiff's effort to pierce its own corporate veil to impose environmental liabilities on its own former minority shareholders. But the facts and circumstances of the ECRA Filing are plainly inadequate to justify the extraordinary remedy of piercing the corporate veil to impose liability on former minority shareholders. Significantly, the Amended Complaint fails to allege that any of the Defendants participated in or made representations with respect to the ECRA Filing, or that any representations made to NJDEP in the filing were incomplete, inaccurate, or misleading. Moreover, just as in the New Jersey Action, Plaintiff alleges no facts here to suggest that Defendants, while they were minority shareholders of H. Kohnstamm, dominated or controlled the company or abused the corporate form in any way to perpetrate a fraud, as would be required under New York law to pierce the corporate veil. Without anything more than generalized, boilerplate allegations in this regard, Plaintiff's claims are fatally deficient and are properly dismissed by this Court.

## II.  FACTUAL BACKGROUND

As noted above, Plaintiff premises its claims on a series of events collectively referred to as the "1988 Transaction." See Amended Complaint ¶¶ 14-34. Specifically, in 1988, Plaintiff (then H. Kohnstamm) transferred ownership of a facility in Camden, New Jersey (referred to in the Amended Complaint as "Camden Property") to its then-wholly-owned subsidiary, General Color. A majority of the soon-to-be former shareholders of H. Kohnstamm became shareholders of General Color. Thereafter, all of the issued and outstanding stock of H. Kohnstamm was acquired by Universal Foods, a Wisconsin corporation. Universal Foods (now known as

Sensient Technologies) did not acquire General Color as part of the 1988 Transaction. Rather, Universal Foods insisted upon the transfer of the ownership of the Camden Property to General Color in the mistaken belief that the transfer would insulate H. Kohnstamm (now Plaintiff Sensient Colors) from potential environmental liabilities arising from the Camden Property. See Amended Complaint ¶¶ 1-2. As of the time of the 1988 Transaction, the moving parties here owned less than 2 percent of the outstanding common stock of H. Kohnstamm.[2] Universal Foods changed the name of H. Kohnstamm first to Warner-Jenkinson Co., and thereafter to Sensient Colors -- at all times the same New York corporation. See Amended Complaint ¶ 18; see also December 9, 1987 Agreement and Plan of Reorganization (Exhibit "A" to the Amended Complaint) (the "1988 Transaction Agreement").

The 1988 Transaction Agreement included a provision at Section 5.3 requiring H. Kohnstamm to seek a determination from NJDEP as to whether ECRA[3] requirements were applicable to the 1988 Transaction. See 1988 Transaction Agreement at ¶ 5.3 (Exhibit "A" to the Amended Complaint). This provision stated:

---

[2]    Even including the two additional Defendants named in the Amended Complaint but not yet served, the minority shareholders' collective ownership was less than 2 percent. See September 7, 1988 Shareholders Agreement (Exhibit "B" to the Amended Complaint).

[3]    The Environmental Cleanup Responsibility Act, N.J. Stat. Ann. § 13:1K-6 et seq. ("ECRA"), adopted in 1983, required as a precondition to the sale, transfer, or closure of certain industrial establishments that a complete environmental review and, where necessary, remediation be conducted by facility owners. The requirements of ECRA were triggered upon the "[c]losing, terminating or transferring operations" of an industrial establishment. N.J. Stat. Ann. § 13:1K-8(b). "Transferring operations" was defined as a "transaction or proceeding through which an industrial establishment…undergoes a change in ownership…." "Change in ownership," in turn, was defined as including, but not limited to, "sale of stock in the form of statutory merger or consolidation, sale of the controlling share of the assets, the conveyance of the real property, dissolution of corporate identity, financial reorganization and initiation of bankruptcy proceedings." Id. A "corporate reorganization not substantially affecting the ownership of the industrial establishment" was specifically excluded from being a "change in ownership" triggering ECRA applicability. Id.

> The Selling Shareholders and the Company shall promptly take all necessary steps to obtain a determination(s) of ECRA nonapplicability ("Determination") for the transactions contemplated hereby from the New Jersey Department of Environmental Protection ("NJDEP") under ECRA for all New Jersey real property. This shall include, but not be limited to, a prompt filing of a complete initial notice to the NJDEP, and a prompt application for a favorable determination. Copies of all submissions and correspondence and other communications both to and from the Selling Shareholders and the Company which relate to ECRA shall be promptly forwarded to Universal Foods.

See id.

In accordance with the 1988 Transaction Agreement, H. Kohnstamm submitted its initial ECRA Filing on August 31, 1987.[4]  See ECRA Filing (Exhibit "C" to the Amended Complaint). This submission summarized the structure of the proposed transactions described in the 1988 Transaction Agreement, and requested a determination by NJDEP that the transactions constituted a "corporate reorganization not substantially affecting the ownership of the industrial establishment," falling outside of the requirements of ECRA. NJDEP responded by letter dated October 21, 1987, concluding that the 1988 Transaction constituted "a corporate reorganization not substantially affecting the ownership of the Industrial Establishments" and, as a result, that ECRA requirements were not applicable. Id.

On January 12, 1988, H. Kohnstamm, again through its outside counsel, submitted a revised version of the ECRA Filing, based upon a change in the proposed methodology for distributing shares of General Color to former shareholders of H. Kohnstamm. Id. By letter dated January 27, 1988, NJDEP reaffirmed its initial determination of ECRA non-applicability, stating in relevant part:

---

[4]     The ECRA Filing was submitted on behalf of H. Kohnstamm by its outside counsel at McCarter & English and H. Kohnstamm's then-Vice President, Daniel Kaufman, who is now deceased.

> This decision is made in light of the absence of a transaction
> covered by [ECRA].  The transfer of Kohnstamm's Camden
> facility to General Color Company, a wholly owned subsidiary of
> Kohnstamm, and the transfer of General Color Company to
> Kohnstamm's shareholders, who are members of the Kohnstamm
> family on a pro-rata basis are considered corporate reorganizations
> not substantially affecting the ownership of the Industrial
> Establishments.

Id.  Notably, there is no allegation in the Amended Complaint that Plaintiff (then H.

Kohnstamm), its employees, agents or outside legal counsel made any false or misleading

statements or material omissions in the ECRA Filing.[5]  Additionally, there is no allegation in the

Amended Complaint that any of the Defendants personally participated in, or had anything to do

with the ECRA Filing, either directly or indirectly.  Rather, the only action alleged by Plaintiff to

have been taken by any of the Defendants personally is the execution of a September 7, 1988

Shareholders Agreement, which merely outlined certain restrictions on the transfer of the stock

of Universal Foods and General Color received by certain of the former H. Kohnstamm minority

shareholders in the 1988 Transaction, but which had nothing to do with the ECRA Filing.  See

Amended Complaint ¶ 21; Shareholders Agreement (Exhibit "B" to the Amended Complaint).[6]

## III.    THE LEGAL STANDARD ON A MOTION TO DISMISS

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the U.S. Supreme Court held

that to "adequately state" a claim, a plaintiff must plead facts sufficient to "raise a right to relief

---

[5]    Although the Amended Complaint alleges that the August 31, 1987 ECRA Filing "asked the NJDEP to disregard the corporate form" between and among H. Kohnstamm, its shareholders and General Color, and represented that there was no corporate distinction between the selling shareholders, H. Kohnstamm and General Color, see Amended Complaint ¶¶ 23 & 56, the actual text of the letter contains no such statements.  See ECRA Filing (Exhibit "C" to the Amended Complaint).

[6]    None of the Defendants signed the 1988 Transaction Agreement (Exhibit "A" to the Amended Complaint), and the Amended Complaint does not allege otherwise.

above the speculative level." Id. at 1965.  As such, a complaint must include "enough facts to

state a claim to relief that is plausible on its face." Id. at 1974.  As stated in Twombly:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.

Id. at 1964-65 (internal citations omitted).

A complaint cannot simply "le[ave] open the possibility that [the] plaintiff might later

establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted).

Rather, to survive a motion to dismiss, the facts set forth in the complaint must be sufficient to

"nudge [] the[ ] claims across the line from conceivable to plausible." Id. at 1974; see Iqbal v.

Hasty, 490 F.3d 143, 155-56 (2d Cir. 2007); Kahn v. NYU Med. Ctr., 2007 WL 2000072, at *2

(S.D.N.Y. July 10, 2007).

## IV.    LEGAL ARGUMENT

### A.    The Amended Complaint Fails to State any Viable Claims Because Plaintiff Cannot Pierce Its Own Corporate Veil as a Matter of Law.

Piercing the corporate veil of a New York corporation is an extraordinary remedy that is

appropriate only in the most exceptional of circumstances, and New York courts are very

reluctant to do so.  See Puma Indus. Consulting, Inc. v. Daal Assoc., 808 F.2d 982, 986 (2d Cir.

1987); In re Adelphia Commc'ns. Corp., 322 B.R. 509, 520-21 (Bankr. S.D.N.Y. 2005).

Further, New York courts have routinely concluded that a corporation may not pierce its

own corporate veil.  See Harris v. Stony Clove Lake Acres Inc., 608 N.Y.S.2d 584, 586 (N.Y.

App. Div. 1994) (stating in a "reverse piercing" case that "[a] corporation, even when wholly

owned by a single individual has a separate legal existence from its shareholders, and courts are

loathe to disregard the corporate form for the benefit of those who have chosen that form to

conduct business") (citations omitted); Coast Mfg. Co. v. Keylon, 600 F. Supp. 696, 698

(S.D.N.Y. 1985) ("[a] corporation may not pierce its own corporate veil, nor cause its parent or

subsidiary to do so"); 18 Am. Jur. 2d *Corporations* § 46 (1985) (stating that, "[g]enerally, the

corporate veil is never pierced for the benefit of the corporation or its stockholders").  The New

York Appellate Division has explained the rationale against self-piercing:

> When a functioning corporation sues on its own behalf, it is in essence suing for
> the benefit of its shareholders.  Thus, a suit by a viable corporate entity seeking to
> pierce its own veil is the equivalent of a suit by a corporation for the benefit of its
> shareholders brought against its shareholders, [is] an absurdity.  This is the clear
> and compelling rationale why courts have failed to recognize such an action.

Corcoran v. Frank B. Hall & Co., 545 N.Y.S.2d 278, 283 (N.Y. App. Div. 1989).

The typical veil-piercing case is one in which the plaintiff is a third party seeking to

pierce the corporate veil between a parent corporation and its subsidiary, based upon claims of

injury arising from the parent's domination of the subsidiary and its fraudulent or wrongful

conduct.  This case is completely different.  Plaintiff is not an innocent third party outsider, but

rather is H. Kohnstamm (now Plaintiff Sensient Colors) itself, which is seeking to pierce its own

corporate veil for its own benefit.  Unlike an innocent third party, Plaintiff here (while operating

under the name H. Kohnstamm) had full involvement, knowledge, understanding and approval

of the 1988 Transaction and the ECRA Filing.  See In re Thomson McKinnon Secs., Inc., 149

B.R. 61, 73 (Bankr. S.D.N.Y. 1992) (concluding that veil-piercing remedy not appropriate where

claimants were executive officers of the corporation whose veil it sought to pierce).  Given these

circumstances, the extraordinary remedy of piercing Plaintiff's own corporate veil, to enable it to

foist environmental liabilities upon its own former minority shareholders, is unequivocally

inappropriate as a matter of law.

**B.**     **Even If Self-Piercing Were Legally Permissible, Which It Is Not, Plaintiff's Amended Complaint Fails to Allege Facts Sufficient to Justify the Extraordinary Remedy of Piercing the Corporate Veil.**

The stringent standard for piercing the corporate veil under New York law places the burden on the plaintiff to establish two distinct elements:

> (1) the owners exercised *complete domination* of the corporation in respect to the transaction attacked; and (2) that such domination was used to *commit a fraud or wrong* against the plaintiff which *resulted in plaintiff's injury*.

Morris v. New York State Dep't of Taxation & Fin., 603 N.Y.S.2d 807, 810-11 (N.Y. 1993) (emphasis added); see also Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997) (holding that in order to pierce corporate veil under New York law, plaintiff must prove that (1) the owner exercised such control that the corporation became a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or wrong; and (3) the fraud or wrong resulted in an unjust loss or injury to the plaintiff); Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d 91, 96 (E.D.N.Y. 1998), aff'd, 242 F.3d 366 (2d Cir. 2000); see Wm. Passalacqua Builders, Inc. v. Resnick Devs. South, Inc., 933 F.2d 131, 139 (2d Cir. 1991) (noting that it is plaintiff's burden to establish justification for piercing the corporate veil).  Under this stringent standard, a showing of mere domination is insufficient, as it must also be established that through this domination, the owners "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice" upon the plaintiff.  Morris, 603 N.Y.S.2d at 810-11.  Even if Plaintiff could pierce its own corporate veil, which it cannot, Plaintiff's Amended Complaint completely fails to sufficiently allege either of the two requisite elements of veil piercing.

    **1.**     **Plaintiff Has Wholly Failed To Allege Facts Sufficient to Establish "Domination" by the Defendants Over H. Kohnstamm in Connection with the 1988 Transaction – The First Prong of the <u>Morris</u> Test.**

In order to satisfy the "domination" element of the <u>Morris</u> test, Plaintiff's Amended Complaint must allege facts which, if proven, would demonstrate that Defendants exercised complete domination or control over H. Kohnstamm with regard to the ECRA Filing.  <u>See</u> <u>Morris,</u> 603 N.Y.S.2d at 810-11.  Plaintiff's Amended Complaint completely fails to do so.

New York law requires a high level of domination by a party to justify piercing the corporate veil.  <u>Sahu v. Union Carbide Corp.</u>, 2006 WL 3377577, at *4-*5 (S.D.N.Y. Nov. 20, 2006); <u>see</u> <u>Truglia v. KFC Corp.</u>, 692 F. Supp. 271, 275 (S.D.N.Y. 1988) ("The mere assertion that a corporate parent is or was involved in the decision-making process of its subsidiary, or that it controlled the legitimate policies of its subsidiary[,] will not shift liabilities among distinct corporate entities."), <u>aff'd</u>, 875 F.2d 308 (2d Cir. 1989).  Indeed, even where a high degree of shareholder control of the corporation has been shown, the Second Circuit has rejected an attempt to pierce the corporate veil, based on insufficient evidence of domination as a matter of law.  <u>See, e.g.</u>, <u>Am. Fuel Corp. v. Utah Energy Dev. Co</u>., 122 F.3d 130, 134-35 (2d Cir. 1997) (holding evidence of domination was inadequate, even though corporation had no employees, no independent space, no bank account, no capital or assets, and shareholder paid the corporation's expenses from his own pocket without keeping records of the transactions).

Here, Plaintiff has alleged no factual basis to justify its wholly conclusory allegation that Defendants, as former minority shareholders owning less than 2 percent of the outstanding common stock of H. Kohnstamm at the time of the 1988 Transaction, exercised any dominion or control over H. Kohnstamm.  <u>See</u> Amended Complaint ¶¶ 30-31.  Specifically, Plaintiff has nowhere alleged (nor could it in good faith allege) any facts suggesting that Defendants failed to

observe conventional corporate formalities, engaged in personal use of corporate funds, or possessed any actual control over company operations, as would be required to support its allegations of domination and control.  See Passalacqua Builders, 933 F.2d at 139.

Plaintiff has likewise failed to allege that any purported degree of control or domination on the part of Defendants had any effect on the ECRA Filing.  Specifically, Plaintiff has not alleged (nor could it in good faith allege) that Defendants personally participated in preparing the submissions to NJDEP or in making any of the representations contained in them, or that any of the Defendants signed the ECRA Filing or had even seen it before it was submitted to NJDEP by H. Kohnstamm's outside counsel.  As this Court has specifically recognized, conclusory allegations of veil-piercing factors, in the absence of supporting facts, are completely insufficient to withstand a motion to dismiss.  See Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries, 2004 WL 2199547, at *11 (S.D.N.Y. Sept. 29, 2004) (Preska, J.).  Accordingly, Plaintiff has failed as a matter of law to establish the "domination" element of the Morris test.

        **2.**        **Plaintiff Has Wholly Failed To Allege Facts Sufficient to Establish Any "Fraud or Other Wrongful Conduct" Committed by Defendants and Causing Injury to Plaintiff – The Second Prong of the Morris Test.**

In order to satisfy the second prong of the Morris test, Plaintiff's Amended Complaint must allege facts which, if proven, would demonstrate that Defendants used their purported domination of H. Kohnstamm to commit fraud or other wrongful conduct causing injury or injustice to Plaintiff.  See Morris, 603 N.Y.S.2d at 810-11; see Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp., 833 F.2d 418, 424 (2d Cir. 1987) (holding that even if domination is shown, there must also be a showing that the domination "was used to commit wrong, fraud, or the breach of a legal duty . . . and that the control and breach of duty proximately caused the injury complained of"); Am. Fuel, 122 F.3d at 134-35 (rejecting veil piercing effort because of

lack of nexus between alleged wrongful conduct and plaintiff's injury); Thrift Drug, Inc. v. Universal Prescription Adm'rs., 131 F.3d 95, 97-98 (2d Cir. 1997). Plaintiff's Amended Complaint wholly fails to satisfy this prong of the Morris test.

Specifically, Plaintiff has nowhere alleged (nor could it in good faith allege) any facts establishing any fraudulent or illegal purpose or acts on the part of Defendants as purportedly dominant owners of H. Kohnstamm.[7] Further, while Plaintiff alleges that it (then H. Kohnstamm) submitted the ECRA Filing, Plaintiff does not allege anything (nor could it allege anything) fraudulent, illegal or in any way wrongful in the filing, or in the fact of the filing. Quite the contrary, the ECRA filing was in fact mandated by Universal Foods in the 1988 Transaction Agreement. See 1988 Transaction Agreement at ¶ 5.3 (Exhibit "A" to the Amended Complaint). Finally, Plaintiff does not allege any facts to support a finding that any purported wrongdoing by Defendants had the effect of inflicting any injury or injustice upon Plaintiff. Having failed to allege anything more than conclusory allegations of veil-piercing factors, see Northrop Grumman, 2004 WL 2199547, at *11, Plaintiff has failed as a matter of law to establish the "fraud or other wrongful conduct" element of the Morris test.

### C.    Plaintiff's CERCLA Claims Fail As A Matter of Law (Counts I and II).

Plaintiff's claims against Defendants pursuant to CERCLA §§ 113(f)(1) and 113(g)(2), 42 U.S.C. §§ 9613(f)(1) and (g)(2), are properly dismissed as a matter of law. Under no circumstances can any of the Defendants, as former individual minority shareholders of H.

---

[7]    While Plaintiff attempts in Paragraphs 27-28 of the Amended Complaint to suggest that the ECRA Filing that it made (when named H. Kohnstamm) was rendered "inaccurate and fraudulent" by actions by unnamed Defendants, those vague and illogical allegations lend no support to Plaintiff's veil-piercing argument. As to Plaintiff's allegation that certain Defendants were "on notice of potential environmental problems at the Camden Property," Plaintiff expressly acknowledges in the Amended Complaint that Universal Foods had "serious concerns" about potential environmental problems at the Camden Property prior to its acquisition of H. Kohnstamm. See Amended Complaint ¶¶ 1, 29.

Kohnstamm, be considered "owners" or "operators" of the Camden Property within the meaning of CERCLA § 107(a), 42 U.S.C. § 9601(a), whether on the basis of veil-piercing or otherwise.

Questions of "owner" and "operator" liability under CERCLA are properly decided under traditional principles of New York state corporate law, including New York law on piercing the corporate veil.  See United States v. Bestfoods, 524 U.S. 51, 53, 70 (1998) (holding that district court erred in treating CERCLA as if it "displaced or fundamentally altered common law standards of limited liability"); State of New York v. Nat'l Servs. Indus. Inc., 352 F.3d 682 (2d Cir. 2003) (adopting approach articulated in Bestfoods); Pfohl Bros. Landfill Site Steering Comm. v. Browning-Ferris Indus. of N.Y., Inc., 2004 WL 941816, at *9 (W.D.N.Y. Jan. 30, 2004) (holding that New York state corporate law, and not federal common law, applied to issues of CERCLA liability).

As noted above, the Defendants in this matter are former minority shareholders who collectively owned less than 2 percent of the outstanding common stock of H. Kohnstamm at the time of the 1988 Transaction.  Under New York law, Defendants could be held personally liable under CERCLA only if they specifically directed or actively participated in the activities that led to the release of hazardous substances at the Camden Property.  See Delaney v. Town of Carmel, 55 F. Supp. 2d 237, 255 (S.D.N.Y. 1999); see also State of New York v. Shore Realty Corp., 759 F.2d 1032, 1052 (2d Cir. 1985) (imposing liability on a stockholder who managed the corporate owner of a hazardous waste site); Bestfoods, 524 U.S. at 66-67, 71 (defining CERCLA "operator" as a person who "must manage, direct or conduct operations specifically related to pollution . . . or having to do with the leakage or disposal of hazardous wastes, or decisions about compliance with environmental regulations"); Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc., 153 F. App'x. 749, 751 (2d Cir. 2005), cert. denied, 127 S. Ct. 2995 (2007).

Importantly, the mere conduct by a shareholder of activities that are consistent with and incident to legal status as a shareholder, such as election of directors and making of by-laws, is completely inadequate to impose CERCLA liability upon the shareholder.  Bestfoods, 524 U.S. at 61-62 (citations omitted); see United States v. Green, 33 F. Supp. 2d 203, 217 (W.D.N.Y. 1998) (stating that for a stockholder to be liable under CERCLA, the stockholder must engage in actions beyond those incident to the legal status as a stockholder).  Moreover, the notion that a shareholder's ownership of shares in a corporation that owns property could somehow make the shareholder the owner of the property finds no support in New York law whatsoever.  See United States v. Wallach, 935 F.2d 445, 462 (2d Cir. 1991) ("shareholders do not hold legal title to any of the corporation's assets").

Here, the Amended Complaint does not (and could not) allege that Defendants in any way specifically directed or actively participated in the activities that led to the alleged release of hazardous substances at the Camden Property.  The Amended Complaint likewise contains (and could in good faith contain) no allegations that any of the Defendants managed or conducted operations related to alleged hazardous waste disposal at the Camden Property, or controlled decisions related to compliance with environmental regulations.  See Amended Complaint ¶ 38 (recognizing that the Camden Property was operated by H. Kohnstamm between 1922 and 1988).

Alternatively, under New York law, Defendants could be held personally liable for corporate environmental liabilities under CERCLA if both elements of the above-described Morris test were satisfied, warranting piercing of the corporate veil.  See Bedford Affiliates v. Sills, 156 F.3d 416, 431-32 (2d Cir. 1998) ("a finding that [defendant's] corporate domination caused the contamination at the Site must be made . . . before veil-piercing can occur").  As

discussed above, however, the Amended Complaint falls far short of alleging facts which, if proven, would be sufficient to satisfy either prong of the Morris test.  As such, Plaintiff's Amended Complaint completely fails to establish any colorable CERCLA claim against any of the Defendants as a matter of law.  See Delaney, 55 F. Supp. 2d at 255; Bestfoods, 524 U.S. at 66-67, 71; Bedford Affiliates, 156 F.3d at 431-32.

**D.    Plaintiff's New Jersey Spill Act Claims Fail As A Matter of Law (Counts  III and IV)**

Plaintiff's claims against Defendants pursuant to the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11 *et seq.* (the "Spill Act"), are also properly dismissed as a matter of law.  Under no circumstances can the Defendants be deemed "persons responsible for a discharge" at the Camden Property within the meaning of the Spill Act, either directly or pursuant to a veil-piercing theory.

According to the Spill Act, a "person responsible for a discharge" includes "any person whose act or omission results in a discharge; . . . owners and operators of a facility from which a discharge has occurred; . . . any person who owns or controls any hazardous substance which is discharged; . . . [or] any person who has allowed a discharge to occur."  See N.J. Admin. Code § 7:1E-1.6.  Here, Plaintiff's Amended Complaint does not allege (and could not allege in good faith) any facts which, if proven, could support a finding that any of the Defendants were "persons responsible for a discharge" at the Camden Property.

Plaintiff's only allegations in this regard are that H. Kohnstamm's ECRA Filing "admitted" that Defendants were "the beneficial and equitable owners of the Camden Property" and/or "controlled" H. Kohnstamm and "therefore, the Camden Property," such that Defendants are "persons responsible for a discharge" under the Spill Act.  See Amended Complaint ¶¶ 54-56.  As an initial matter, the ECRA Filing did not contain any such "admissions," and this

allegation by Plaintiff is properly disregarded by the Court.  See ECRA Filing (Exhibit "C" to Amended Complaint); see, e.g., Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (on motion to dismiss, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint").

But these allegations further defy reason given that, as set forth in detail above, Plaintiff's allegations do not even hint that any of the Defendants personally participated in, or had anything to do with H. Kohnstamm's ECRA Filing, either directly or indirectly.  Plaintiff is thus attempting to rely on *its own* representations to NJDEP (while operating under the name H. Kohnstamm) as constituting "admissions" by Defendants justifying the imposition of Spill Act "discharger" liability.  This argument is properly rejected as a matter of law.

In any event, New Jersey law is clear that under no circumstances can a shareholder be held liable for a violation of the Spill Act on a veil-piercing theory without proof that the shareholder was personally and directly involved in the waste disposal activities giving rise to the environmental liabilities at issue.  See State v. Arky's Auto Sales, 224 N.J. Super. 200, 203-07 (N.J. Super. Ct. App. Div. 1988) (reversing trial court's imposition of Spill Act liability on two individual owners of company's shares on basis of veil-piercing, where owners' actions were for the corporation, not for themselves individually, and where insufficient credible evidence existed to justify veil-piercing); see also Analytical Measurements, Inc. v. Keuffel & Esser Co., 816 F. Supp. 291, 299 (D.N.J. 1993) (citing Arky's in rejecting imposition of Spill Act liability on basis that corporate veil could not be pierced); Fishbein Family P'ship v. PPG Indus., Inc., 871 F. Supp. 764, 770-72 (D.N.J. 1994) (citing Analytical Measurements for the

proposition that shareholder "cannot be held liable [under Spill Act or CERCLA] as an owner because the property of a corporation is its own property, not that of its shareholders").

Here, Plaintiff's claims against the Defendants under the Spill Act are far more attenuated than those presented in Arky's.  In addition to the fact that Defendants here were minority shareholders owning less than 2 percent of the outstanding shares of H. Kohnstamm at the time of the 1988 Transaction, Plaintiff has not alleged (and could not in good faith allege) that Defendants had any role whatsoever in the day-to-day operations of the Camden Property, or were otherwise involved in any alleged discharges of contaminants at the Camden Property.  As such, Plaintiff's Amended Complaint completely fails to establish any viable Spill Act claims against any of the Defendants as a matter of law.

     **E.     Plaintiff's Civil Conspiracy Claim Fails As A Matter of Law (Count IX).**

Under New York law, a civil conspiracy claim is cognizable only where the facts alleged, if proven, would serve to establish an underlying actionable and intentional tort.  World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).  Here, the Amended Complaint fails to allege the elements of any underlying tort, or even identify any purported underlying tort.  See Amended Complaint ¶¶ 76-82.  Indeed, the facts alleged in the Amended Complaint, even if proven, are insufficient to establish any underlying tort.  Thus, Plaintiff's claim of civil conspiracy is legally defective and properly dismissed.

     **F.     The Remaining Counts of Plaintiff's Amended Complaint are Derivative Claims That Fail as a Matter of Law Because the Defendants Have No Independent Liability on any of Plaintiff's Other Claims (Counts V, VI, VII and VIII).**

In the remaining Counts V, VI, VII and VIII of the Amended Complaint, Plaintiff attempts to allege claims against Defendants under the Joint Tortfeasors Contribution Act, N.J. Stat. Ann. § 2A:53A-1, et seq., ("JTCA") (Counts V and VI); on a theory of common law

indemnification (Count VII); and on a theory of unjust enrichment (Count VIII).  Because none

of these claims presents an independent theory of liability against any of the Defendants, they are

properly dismissed as a matter of law.

   To succeed on any of these claims, Plaintiff must first establish that Defendants have

independent liability to Plaintiff based upon some other cause of action or theory of liability.

See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 263 F. Supp. 2d 796, 870 (D.N.J. 2003)

("A right to contribution only arises under the [JTCA] when an 'injury or damage is suffered   .

. . as a result of the wrongful act, neglect or default of joint tortfeasors' and one of the joint

tortfeasors pays more than his pro rata share of the damage."), aff'd, 399 F.3d 248 (3d Cir), cert.

denied, 545 U.S. 1129 (2005); id. at 871 ("A party is entitled to common law indemnification

where its liability is entirely constructive, vicarious, and not based on any fault of its own.");

New York State Elec. & Gas Corp. v. First Energy Corp., 2007 WL 1434901, at *7 (N.D.N.Y.

May 11, 2007) ("To invoke the right of contribution, a party generally must resolve an

underlying, common liability toward a third party"); Pereira v. United Jersey Bank, N.A., 201

B.R. 644, 677 n.19 (S.D.N.Y. 1996) (citing Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.,

619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) ("[u]njust enrichment is not an independent

theory of liability")).

   As described in detail above, however, Defendants are not liable to Plaintiff on any of the

principal claims alleged in the Amended Complaint.  Accordingly, all of Plaintiff's derivative

claims must fail as a matter of law.

   **G.**  **Plaintiff Is Collaterally Estopped From Asserting Any Claims Based on a
Veil Piercing Theory Based Upon The Outcome of the New Jersey Action.**

   Plaintiff's Amended Complaint is properly dismissed not only for failure to state any

viable claims, but also on the basis of collateral estoppel, which prevents a party from relitigating

in a subsequent action an issue that was clearly raised in a prior action and decided against that party.  See Washington v. U.S. Tennis Ass'n, Inc., 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003). The relitigation of an issue is barred if "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (citations omitted).

Although a dismissal for lack of personal jurisdiction typically does not have a preclusive effect in a subsequent litigation, where a factual determination essential to deciding jurisdiction is made, an adverse ruling at the jurisdictional stage precludes a party from relitigating the same issue in connection with its claim on the merits.  See Baidas v. Jenifer, 123 F. App'x. 663, 672 (6th Cir. 2005) (holding that where a panel, in determining jurisdiction, considered several of Plaintiff's arguments as to why he was not a criminal alien, those issues were actually and necessarily litigated and Plaintiff was estopped from relitigating them); Matosantos Comm. Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1209-10 (10th Cir. 2001) (holding that where district court ruled it lacked personal jurisdiction in prior case because a franchisor did not assume the contract obligations of its franchisee, that adverse ruling was fatal to plaintiff's claim on the merits in subsequent litigation in which same issue was part of plaintiff's prima facie case); Okoro v. Bohman, 164 F.3d 1059, 1063 (7th Cir. 1999) (similar); see generally 18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4436 ("Issue preclusion also has been extended to determinations on the merits that control the denial of personal jurisdiction.") (citing Matosantos, 245 F.3d at 1209-12).

As described above, in 2005, Plaintiff filed a Third Party Complaint in the New Jersey Action raising claims and issues virtually identical to those set forth in the Amended Complaint here.[8]  In its Amended Complaint here, Plaintiff acknowledges that the New Jersey Action was dismissed on the ground that the Court lacked personal jurisdiction over the third-party defendants.  See Amended Complaint ¶ 36.  The Amended Complaint fails to acknowledge, however, that in conjunction with determining that the Court had no personal jurisdiction, the Court expressly determined that Plaintiff had failed to establish any basis for piercing its own corporate veil.  See 2/3/06 Hearing Transcript at 32-33 (Lampert Dec., Exhibit A).  Based on the well-established principles of collateral estoppel noted above, this finding precludes Plaintiff from relitigating any and all claims here based on corporate veil-piercing.

Whether Plaintiff could pierce its own corporate veil was a critical issue in Plaintiff's unsuccessful attempt to convince the New Jersey Court to exercise personal jurisdiction over the third-party defendants in the New Jersey Action (which included the moving parties here).  At oral argument, Plaintiff's counsel specifically argued that "certainly, this Court has the authority to exercise jurisdiction and to have its law applied in the circumstance of piercing the veil."  See 2/3/06 Hearing Transcript at 19-21 (Lampert Dec., Exhibit A).  Having lost that issue in the New Jersey Action, Plaintiff is now collaterally estopped from relitigating the same veil-piercing issue here.  Given that all of Plaintiff's claims in this case involve or otherwise depend upon its ability to pierce its own corporate veil, Plaintiff's Amended Complaint is properly dismissed in its entirety on collateral estoppel grounds.

---

[8]      While Plaintiff has not supplied the Court with a copy of the Third Party Complaint in the New Jersey Action, a copy (without exhibits) is supplied in support of this Motion (Lampert Dec., Exhibit C), and is properly considered by the Court.  See Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that court can consider on motion to dismiss any document referenced in Complaint, even if it is not attached thereto).

V.    **CONCLUSION**

For each of these reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint of Plaintiff Sensient Colors, Inc. in its entirety and dismiss Plaintiff's claims against Defendants with prejudice.

**SAUL EWING LLP**
Attorneys for Defendants Peter L. Kohnstamm
and Elizabeth K. Ogden

By:   s/_____
         Michael A. Lampert

**CONRAD, O'BRIEN, GELLMAN & ROHN, P.C.**
Attorneys for Defendants Abby F. Kohnstamm and
Sarah F. Kohnstamm

By:     Robert N. Feltoon