### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SENSIENT COLORS INC., | : | Case No.  07 CIV 7846 (LAP) |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | **DECLARATION OF** |
| | : | **MICHAEL A. LAMPERT** |
| ABBY F. KOHNSTAMM; PETER L. | : | |
| KOHNSTAMM; SARAH F. | : | (Filed Electronically) |
| KOHNSTAMM; ELIZABETH K. | : | |
| OGDEN; RICHARD L. OGDEN; | : | |
| THOMAS H. OGDEN; JOHN DOE | : | |
| INDIVIDUALS 1-20 (fictitious | : | |
| names); and ABC COMPANIES 1-20 | : | |
| (fictitious names), | : | |
| | : | |
| Defendants. | : | |

MICHAEL A. LAMPERT hereby declares pursuant to 28 U.S.C. § 1746:

1.    I am a partner with the law firm of Saul Ewing LLP, attorneys for Defendants

Peter L. Kohnstamm and Elizabeth K. Ogden.  As such, I am fully familiar with the facts set

forth herein.

2.    Attached hereto are true and correct copies of the following documents:

Exhibit A:    Transcript of February 3, 2006 Hearing before the Honorable
Charles A. Little, J.S.C.

Exhibit B:    Amended Order of March 22, 2006

Exhibit C:    Third Party Complaint in New Jersey Action

I declare under penalty of perjury that the foregoing is true and correct.

s/_____
Michael A. Lampert

Dated: October 22, 2007
Philadelphia, Pennsylvania

1024894.1 10/22/07

# EXHIBIT A

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
CAMDEN COUNTY
DOCKET NO.:
A.D.#:_____

PLEASANT GARDENS REALTY,       )
CORP.,                         )
                               )
        Plaintiffs,            )        TRANSCRIPT
                               )            OF
    vs.                        )        HEARING
                               )
H. KOHNSTAMM & CO., INC.,      )
et al.,                        )
                               )
        Defendants.            )


                Place:   Camden County Courthouse
                         25 N. 5th Street
                         Camden, N.J. 08102

                Date:    February 30, 2006

BEFORE:

    HONORABLE CHARLES A. LITTLE, J.S.C.

TRANSCRIPT ORDERED BY:

    SHANNA P. O'NEAL, ESQUIRE (Saul, Ewing)

APPEARANCES:

    JOHN F. STOVIAK, ESQUIRE (Saul, Ewing)
    SHANNA P. O'NEAL, ESQUIRE
    Attorney for Dan and Elizabeth Kohnstamm, Kenneth and
    Adam Kohnstamm, Joshua and Ricka Robb Kohnstamm, Peter
    Kohnstamm and Mary Kohnstamm.

    DENNIS KRUMHOLZ, ESQUIRE (Riker, Danzig)
    Attorney for Richard Kohnstamm, David Kohnstamm,
    Jeffrey Kohnstamm, John Kohnstamm and Kevin Kohnstamm.

    ROBERT FELTOON, ESQUIRE (Conrad, O'Brien)
    Attorney for Abby Kohnstamm

Colloquy                    4

1          (Court in Session)
2              THE COURT:  Pleasant Gardens.  We have half
3      the people here anyway.  Come on down sport's fans.
4      Are you guys in those other 500 Pleasant Gardens that
5      Judge Colalillo was so nice to assign to me?
6              COUNSEL:  No.
7              THE COURT:  Are we having a jury
8      presentation?
9              COUNSEL:  No, I just wanted to liven it up,
10     Your Honor, if I may with a --
11             THE COURT:  You got to get a little better
12     than boards, I can tell you that.  You get some dancing
13     girls to come across with those.
14             All right, gentlemen, this is -- I lost my
15     place and my mind, too.  That's all right.  Enter your
16     appearances.
17             MR. STOVIAK:  Your Honor, John Stoviak.  And
18     I'm with Shanna O'Neal from Saul, Ewing.  We represent
19     third party defendants that are moving, Dan and
20     Elizabeth Kohnstamm, Kenneth and Adam Kohnstamm, Joshua
21     and Ricka Robb Kohnstamm, Peter Kohnstamm and Mary
22     Kohnstamm.
23             THE COURT:  What about Paul?  Did you name
24     Paul?
25             MR. STOVIAK:  Paul Kenneth is his name, but


Colloquy                    5

1      he goes by Kenneth.
2              THE COURT:  You have Mary, Paul, and Peter,
3      what was the singing group?
4              MR. STOVIAK:  Peter, Paul and Mary.
5              THE COURT:  Peter, Paul and Mary.  You don't
6      have any Mary's.
7              MR. STOVIAK:  I do have a Mary.
8              THE COURT:  I have a Rick, Richard, Sarah,
9      Peter, Paul, Paul, Mary -- hey, we do have a Mary --
10     Kevin, Joshua, John, Jeffrey, Elizabeth, David, Daniel
11     and Abby.  Any on the next page?  Yes.  Adam.  Okay.
12     Who do the rest of you guys have?
13             MR. KRUMHOLZ:  Your Honor, Dennis Krumholz,
14     I'm here with Jay Eversman from the Riker, Danzig firm
15     on behalf of third party defendants Richard Kohnstamm,
16     David Kohnstamm, Jeffrey Kohnstamm, John Kohnstamm and
17     Kevin Kohnstamm.
18             MR. FELTOON:  Your Honor, Bob Feltoon from
19     Conrad, O'Brien.  I'm here for just one third party
20     defendant, Abby Kohnstamm.
21             THE COURT:  Abby wouldn't take the stock,
22     right?
23             MR. FELTOON:  Pardon me, Your Honor?
24             THE COURT:  Abby refused to take the stock,
25     she said she didn't want it?

Stoviak - Argument                                    6

1          MR. FELTOON:  Yes.  Abby and her husband
2    Peter did not take the General Color stock.
3          THE COURT:  Right.
4          MR. BOGDONOFF:  Your Honor, Mike Bogdonoff,
5    from Dechert representing Sensient Colors, Inc.  And
6    I'm joined by John Ix, also from Dechert.
7          THE COURT:  Okay.  Who wants to run it?
8          MR. STOVIAK:  Your Honor, if I may?  John
9    Stoviak, again.  I'm going to split up the argument on
10   behalf of the moving third party defendants.  I'm going
11   to talk about why there should be no piercing of the
12   corporate veil, and why the request here, set forth on
13   the third-party complaint, is totally unprecedented.
14         Mr. Krumholz is going to speak to the one
15   basis upon which the third party plaintiff seeks to
16   pierce the corporate veil, the ECRA filings and
17   submissions.
18         And essentially, in light of Your Honor's
19   comment about the shareholders getting out of this
20   case, I'm going to focus my argument on the two
21   individuals that are also directors and why you should
22   also dismiss them from the case.
23         All of the moving third-party defendants are
24   minority shareholders in H. Kohnstamm -- or were
25   minority shareholders in H. Kohnstamm.  Only Kenneth

Stoviak - Argument                                    7

1    Kohnstamm and Richard Kohnstamm were directors of H.
2    Kohnstamm.
3          And essentially why they should be dismissed,
4    even though they were directors of H. Kohnstamm, is the
5    following reason.  Number one, the third party
6    complaint only sues them in their capacity as
7    shareholders.  There are no allegations whatsoever in
8    the third party complaint that either Kenneth Kohnstamm
9    or Richard Kohnstamm engaged in any improper activities
10   as a director of H. Kohnstamm, up until 1988.
11         Or as a --
12         THE COURT:  Richard and Kenneth were both
13   directors?
14         MR. STOVIAK:  Richard and Kenneth were both
15   directors.  Secondly, as a matter of law a corporation
16   cannot pierce its own corporate veil.  And if I may,
17   Your Honor, may I use the chart here to make my point?
18         THE COURT:  Yes.
19         MR. STOVIAK:  Essentially, what you have here
20   in this instance, Your Honor, is you have H. Kohnstamm
21   & Company, Inc. a New York corporation that existed and
22   still exists today.  But from 1922 to 1988, it owned
23   the Camden property, it owned the General Color Company
24   stock and the moving third party defendants only
25   accounted for 25.982 percent of its stock.

Stoviak - Argument                                    8

1           In 1988, the transaction that's at issue,
2    Universal Foods Corporation, which is also represented
3    by the third party plaintiffs here and is a defendant
4    in this case, bought the stock of H. Kohnstamm, and
5    along with it picked up the liabilities as a matter of
6    sort of form of corporate law.
7           When you buy the stock, you pick up the
8    liabilities of that corporation.  Then in, I think,
9    2002, H. Kohnstamm Company still existed as a wholly
10   owned subsidiary of Universal Foods, and it was
11   ultimately renamed Sensient Colors, Inc., a New York
12   corporation, which is the third party plaintiff.
13          So H. Kohnstamm & Company is now Sensient
14   Colors, Inc.  Nothing's changed about it, other than
15   its name has changed, its stock ownership changed in
16   1988 to Universal Foods, but it is the same
17   corporation.
18          And what Sensient Colors, Inc. is trying to
19   do here, as the third party plaintiff, is essentially
20   pierce its own corporate veil and say its own corporate
21   existence is a sham and that you should impose
22   liability on its own shareholders.  The minority moving
23   third party defendants.  Or, in the instance of the
24   directors, but the -- Mr. Richard Kohnstamm and Mr.
25   Kenneth Kohnstamm are only sued as shareholders.


Stoviak - Argument                                    9

1           But there's no -- that argument would still
2    apply as a matter of law that you can't pierce your own
3    corporate veil to impose liability on directors.
4           Particularly here, where there is a total
5    absence of any allegation of fraud, or intentional
6    wrongdoing, or any action that would create a manifest
7    injustice.
8           There is no allegation that Ken or Richard
9    were involved in the ECRA submission, that is the
10   linchpin of the whole theory of this third party
11   complaint to justify piercing the corporate veil.
12          They are sued essentially in their status as
13   shareholders, and, as Mr. Krumholz will cover, the ECRA
14   submission doesn't justify piercing the corporate veil.
15   It was a submission made by H. Kohnstamm & Company,
16   which is now Sensient Colors, the third party
17   plaintiff.
18          And to illustrate why this case should be
19   dismissed now as  a matter of law, you'd simply need to
20   look at the situation in the Arky's case, where you had
21   a situation where there was a Spill Act claim brought
22   by the State Department of Environmental Protection
23   against Arky's Auto Sales, Inc., and two twin brothers,
24   Stanley and Norman Arky.
25          Stanley and Norman Arky happened to go buy a

Stoviak - Argument                                        10

1   piece of property in the name of the corporation in
2   1971, a 22 acre parcel.  They shortly thereafter leased
3   out 6 acres, which became a dumping ground for drums.
4           1973 there was a fire on the property and the
5   drums started to explode and leak all over the place.
6   The State Department of Environmental Protection then
7   started an investigation about this activity and found
8   out that the Arky brothers had gone in and dug a pit on
9   the property and were burying these drums in that pit.
10          They sued both Arky's Auto Sales, and the
11  Arky individual brothers.  The trial court found that
12  the corporate veil should be pierced and there should
13  be individual liability on the two twin brothers,
14  Stanley and Norman.
15          The Appellate Division reversed and said,
16  there is no allegation and no evidence, in that case,
17  since it was a trial, of any fraud by those
18  individuals.  And absent that, you can't go pierce the
19  corporate veil and impose the extraordinary equitable
20  remedy of piercing the corporate veil.
21          Well here, you have minority shareholders
22  being sued in their capacity as shareholders.  You
23  simply have no allegation whatsoever of any fraud, any
24  injustice, or any attempt by these minority
25  shareholders, including the two directors, to treat the


Stoviak - Argument                                        11

1   corporation as a sham, or to create any fraud.
2           Therefore, you should dismiss the case as a
3   matter of law for failure to state a claim.  In
4   addition, on the personal jurisdiction side, the third
5   party plaintiff has the burden to make out a prima
6   facie case pursuant to the Disney case.  Despite having
7   limited discovery on personal jurisdiction issues, they
8   have not submitted any information, other than their
9   bare-bones allegations in the third party complaint,
10  that the moving third party defendants reside in
11  Oregon, Montana, Minnesota, Connecticut, New York.
12          None of them reside in New Jersey, none of
13  them work in New Jersey.  None of them hold bank
14  accounts in New Jersey.  None of them own any real
15  estate, or lease any real estate in New Jersey.  None
16  of them pay taxes.
17          There is no basis for imposing personal
18  jurisdiction on these individuals.  There is no minimum
19  contact on these individuals that justifies that.  And
20  in fact, the ECRA submission, which is what they argue
21  in their complaint, gives them a right to argue that
22  there was a basis for specific jurisdiction, because
23  there was an ECRA submission to the -- a letter
24  submitted to New Jersey Department of Environmental
25  Protection.

Krumholz - Argument                    12

1         That doesn't give them jurisdiction here,
2    because there's no evidence, and in fact the documents
3    attached to the complaint show that the ECRA
4    submission, the letters, were submitted on behalf of H.
5    Kohnstamm, not on behalf of the shareholders.
6         Not on behalf of the moving third party
7    defendant minority shareholders.  Not on behalf of any
8    of the directors.  It was submitted on behalf of H.
9    Kohnstamm.  There's no allegation that any of the
10   moving third party defendants had any role in the ECRA
11   submission.
12        So that doesn't get you to a point where you
13   can justify imposing personal jurisdiction over these
14   moving third party defendants.
15        I'm happy to answer any questions Your Honor
16   might have.  Obviously, based on your initial comment,
17   I think there's absolutely no basis to keep the
18   shareholders in this case, as well.
19        MR. KRUMHOLZ:  If I may Your Honor?  I'm Mr.
20   Krumholz, on behalf of certain of the moving third
21   party defendants.  And I'd like to focus on the ECRA
22   aspect of this motion.
23        ECRA is now the Industrial Site Recovery Act,
24   but it was adopted in 1983 as the Environmental Cleanup
25   Responsibility Act.

Krumholz - Argument                    13

1         It was enacted by the legislature for a
2    variety of reasons.  The main one of which was that
3    they felt that the Government shouldn't be the only
4    party paying for remediation of hazardous waste sites.
5         They felt that private parties should be
6    responsible.
7         THE COURT:  The only thing that letter said
8    was, based upon the form of transaction, they had no
9    jurisdiction.  Isn't that what the letter said?
10        MR. KRUMHOLZ:  That's basically right.
11   There's --
12        THE COURT:  If they had changed to another
13   form of -- like if they were going to sell it to you,
14   then they had to get approvals from ECRA.
15        MR. KRUMHOLZ:  You're right, Your Honor.  The
16   basis of the submittal was to take advantage of the
17   language in the statute which says, there's no
18   jurisdiction where there's a corporate reorganization
19   not substantially effecting ownership.
20        And the argument that the corporation made
21   was, this is such a transaction.  Before the
22   transaction, there will be certain beneficial owners.
23   After the transaction, essentially the same beneficial
24   owners, even though there's been a transaction on the
25   change in corporations.

Krumholz - Argument                          14

1          And that kind of situation is what we think
2     the legislature meant by a corporate reorganization.
3     That was the basis of the filing, and DEP agrees with
4     the filing.  And they granted the letter of
5     non-applicability.
6          Now the third party plaintiff alleges that
7     that even somehow becomes translated into a waiver of
8     the corporate veil protection.  And we submit that
9     there is no legal authority for that proposition at
10    all.  That's the essence of their case.
11         As Mr. Stoviak said, there's no claim of
12    fraud, or injustice, or sham, or alter ego.  None of
13    the traditional bases for piercing the veil is present,
14    is alleged, nor could it in good faith be alleged.  The
15    only claim for liability is this ECRA submission.
16         And I submit to you, Your Honor, that that's
17    an insufficient basis for liability.  There's no
18    support in the law anywhere, nor any cited by third
19    party plaintiffs to suggest that that's a valid cause
20    of action.
21         Indeed, all the DEP did, nothing more, is to
22    recognize the facts.  Which is the beneficial owner
23    doesn't change.  In recognizing that the beneficial
24    owner remains the same, that doesn't pierce the veil,
25    that doesn't say the beneficial owner has liability.

Krumholz - Argument                          15

1     ECRA is not a liability statute.  And, certainly, the
2     DEP is not a court of equity reaching conclusions about
3     equitable matters like piercing the veil.  DEP was
4     simply reaching the conclusion that, on these facts,
5     the transaction met the test of corporate
6     reorganization, but it did not in any way act in
7     derogation or abrogation of the corporate veil
8     principles.
9          And since that is the only allegations and it
10    cannot be made out as a matter of law, we submit that
11    the claim -- the entire third party claim should fail.
12         THE COURT:  Think ECRA's decision would have
13    been different, had Universal bought the assets and not
14    just the stock?
15         MR. KRUMHOLZ:  If at the time that the assets
16    were transferred, but the Camden facility was not among
17    the assets.  I don't think the answer would be
18    different.  I think it would be the same.  Because what
19    they were focusing on was the Camden facility.  And
20    before the transaction, it was owned by a company H.
21    Kohnstamm, whose shareholders were generally the family
22    members, let's say.
23         After the transaction, it was owned by
24    General Color Company, whose shareholders were
25    generally the same individuals.  Whether the purchase

Krumholz - Argument                                16

1    of the company, H. Kohnstamm, or other assets,
2    non-Camden assets was done, formed not too important
3    with respect to the Camden facility.  That was carved
4    out.
5              And I might add, Your Honor, that it was
6    carved out at the request of the buyer, at the request
7    of Sensient Colors, who said, we will take H. Kohnstamm
8    without Camden.  We don't want Camden.  In fact, you
9    must obtain a letter of non-applicability, or else
10   we're not going to proceed with the transaction.
11             So I don't think the form -- to answer your
12   question, the form of the transaction wouldn't matter,
13   as long as the Camden facility had been eliminated, as
14   it was.
15             THE COURT:  And also there was a property in
16   Newark that was not included?
17             MR. KRUMHOLZ:  There was property in Newark
18   that was owned by General Color, which, since General
19   Color was not transferred to the Universal side, was
20   also not transferred, that's correct.
21             THE COURT:  Has there been any litigation
22   involving that?  Out of curiosity.  I don't want it
23   here, if there is.
24             MR. KRUMHOLZ:  As far as I know, Your Honor,
25   we were curious also, none.  I'm not aware of any.

Bogdonoff - Argument                               17

1              THE COURT:  All right.  Thank you.
2              MR. KRUMHOLZ:  Thank you, Your Honor.
3              THE COURT:  All right.
4              MR. BOGDONOFF:  Your Honor, Mike Bogdonoff on
5    behalf of Sensient Colors.  The -- Mr. Krumholz is
6    right that Universal did not want this company.  And --
7    this property in Camden.  This was operated by the
8    Kohnstamm family shareholders, in essence from the
9    period 1922 through 1988.
10             Or the Kohnstamm family generally, not
11   necessarily these specific shareholders.  These movants
12   have portrayed themselves as minority shareholders.
13   They were not the minority shareholders in this
14   particular transaction.  Those minority shareholders
15   were treated much differently than the movants.
16             They were defined separately and they were
17   effectively squeezed out of the transaction.  And they
18   didn't get the benefit of this 10 million dollar deal
19   that ultimately rebounded to the benefit of the
20   Kohnstamm family shareholders in the amount of 8
21   million dollars.
22             They were essentially squeezed out.  None of
23   the true minority shareholders in this case had to do
24   the things that the movants were required to do to make
25   this deal happen.  None of the true minority

Bogdonoff - Argument                                    18

1    shareholders were required to sign a shareholder
2    agreement.  They were not required to sign a
3    representation letter.  They weren't required to sign
4    affiliate letters.  They weren't required to sign the
5    reorganization agreement.
6              Essentially, they were given a pass and they
7    walked out of the matter with essentially no benefit of
8    this Universal deal.  These movants, on the other hand,
9    profited wildly on this transaction, and with the
10   understanding that ultimately they would have to be
11   responsible for the cleanup of the Camden property.
12             Now the Camden property is the subject of EPA
13   clean-up, and the movants are nowhere to be heard from.
14   The express understanding of Universal in the
15   transaction, was that they were not going to take the
16   Camden property.  It was well-recognized by Universal
17   and the Kohnstamm family shareholders, that this was an
18   environmentally troubled property.
19             In fact, Abby and Peter elected not to take
20   General Color stock, because they recognized the
21   environmental problems.
22             Paul Kenneth, referred to as Kenneth by Mr.
23   Stoviak, made marginal notes saying that the downside
24   of this transaction is that ultimately it's going to
25   fall on the family to be responsible for General Color.

Bogdonoff - Argument                                    19

1              Now the injustice that we're seeking to
2    address here in the piercing of the veil, is
3    essentially telling the DEP, or having representations
4    made to the DEP for the benefit of these folks to let
5    this transaction go through as it was.  That the
6    beneficial ownership of General Color would be the same
7    as the Kohnstamm Company.
8              And, in fact, it wasn't, but they made
9    representations that, notwithstanding the fact that
10   they weren't -- that Kohnstamm was 100 percent
11   shareholder interest of which they had approximately 80
12   percent, less than 100 percent of those shareholders
13   were going to become the owners of General Color.  And
14   they said, recognize this for what it is.  We, the
15   Kohnstamm family shareholders, are -- or they the
16   Kohnstamm family shareholders, are in control of this
17   company, and that will happen -- that will be the case
18   both before and after this transaction, when General
19   Color gets the -- is transferred to those Kohnstamm
20   family shareholders.
21             Now with respect to the personal jurisdiction
22   on the veil piercing, the Phar-Mor case, which is cited
23   in our papers, and the In Re Buildings by Jamie case,
24   speak to this issue of piercing one's own veil.
25             Now recognizing that there are issues with

Bogdonoff - Argument                                  20

1    respect to the core proceedings and non-core
2    proceedings, the controlling precedent, the Third
3    Circuit opinion in the Phar-Mor case, does recognize
4    that New Jersey law allows for the piercing of one's
5    own veil and the idea here is that --
6            THE COURT:  Kohnstamm's a New York
7    corporation, isn't it?
8            MR. BOGDONOFF:  That's correct, Your Honor.
9    However, New Jersey has a far greater interest in
10   seeing to it that its environmental sites are cleaned
11   up.  And, certainly, this Court has the authority to
12   exercise jurisdiction and to have its law applied in
13   the circumstance of piercing the veil.
14           The evidence with respect to the piercing is
15   indeed with respect to this ECRA claim and the -- as I
16   described, the submittal was made to the DEP by
17   Kohnstamm Company to say, in essence, these are the
18   same controlling interests as before, as will be in
19   place after, to take advantage of that exemption to
20   ECRA.
21           The reason they needed that exemption to
22   ECRA, was Universal clearly didn't want the property.
23   So that would mean that the Kohnstamm family
24   shareholders and General Color would have to
25   immediately initiate a cleanup, if that exemption were

Bogdonoff - Argument                                  21

1    to not -- to be found not to apply.
2            So, basically, we have the Kohnstamm family
3    shareholders and this representation made to the DEP
4    that says, this is the same controlling interest that
5    both before and after the transaction, and as a result,
6    DEP, don't worry the same people will be here after
7    this transaction and will be responsible for the
8    environmental cleanup.
9            What happened, in fact, though, is that the
10   company limped along, and in and around 1990, the
11   company began a series of redemptions that we only
12   found through this limited discovery period that we've
13   had.  And this redemption process effectively had all
14   of these family shareholder interests, had their stock
15   redeemed, albeit four cents on the dollar, and they
16   essentially walked out the back door, leaving this
17   environmentally troubled site to stay with Paul
18   Kohnstamm and General Color Company and its remaining
19   shareholders and insufficient assets available to
20   ultimately cleanup the property.
21           The personal contacts that these individuals
22   had with the State of New Jersey are significant.  Each
23   of them, and these are all laid out in our papers.  But
24   each of them signed one or more documents that were
25   necessary to make this transaction occur.

Bogdonoff - Argument                                    22

1           And, as noted, even young Adam, a minor, was
2     required to sign these papers in order to effectuate
3     this transaction.  So the fact that these are portrayed
4     as minority is not necessarily the case, because
5     collectively, with the various trusts and with Paul
6     Kohnstamm's share, they equated to approximately 81
7     percent of the share hold interest.
8           Two of these individuals were directors and
9     they had fiduciary obligations to be involved with the
10    company.  And to say that they don't have a reasonable
11    expectation to be hailed into Court in New Jersey,
12    given the fact that this transaction involved, not one,
13    but two environmentally troubled sites within the State
14    of New Jersey, as Your Honor correctly noted.
15          The Newark site still exists and is the
16    subject of EPA cleanup, although no litigation as yet.
17    And this Camden property, this is a multi-million
18    dollar business deal, each of them actively reviewing
19    documents and signing documents, representations being
20    made for their benefit to various state agencies.
21    Environmentally troubled sites.
22          And for them to have a sense that they
23    shouldn't be responsible for a New Jersey litigation,
24    doesn't comport with the law.
25          Finally, with respect to the failure to state

Stoviak - Argument                                      23

1     a claim.  The rules, obviously, are fairly liberal and
2     hospitable and the relief that the movants are
3     requesting is fairly extraordinary.  We believe that
4     the veil piercing allegations, based on the evidence as
5     we presented in the personal jurisdiction argument, are
6     meritorious.  And we also believe that the direct
7     liability under the Spill Act is appropriate.  And
8     particularly in light of this scheme that we've
9     discovered with respect to cashing out, or redeeming
10    out their ownership in General Color.
11          I'd be happy to respond to any questions,
12    Your Honor.
13          MR. STOVIAK:  Your Honor, briefly just a
14    couple of rebuttal points.  Number one, you're right,
15    H. Kohnstamm is a New York corporation.  Number two,
16    the only thing extraordinary is the request to pierce
17    the corporate veil against shareholders who, the issue
18    before this Court are the minority third party -- are
19    the moving third party defendants, who are minority
20    shareholders.
21          Including Adam Kohnstamm, who was five years
22    old in 1988, at the time of the transactions.  And what
23    is not before your court is the Estate of Paul
24    Kohnstamm or the trust.  We don't represent those
25    trusts, we don't represent the Estate of Paul

Stoviak - Argument                          24

1    Kohnstamm.  That is not before the Court.
2                And you have to look, as Mr. Bogdonoff in his
3    brief concedes, you have to look at each of these
4    individual third party defendants on an individual
5    basis.
6                And none of them held any controlling share
7    in the company than collectively the moving third party
8    defendants accounted for roughly 26 percent, as you've
9    seen.
10               Secondly, what is before the Court, there is
11   no allegation, even though Mr. Bogdonoff wants to make
12   it that the Kohnstamm family shareholders dominated, or
13   controlled H. Kohnstamm, because they can't make that
14   allegation, because they are H. Kohnstamm.
15               There's no allegation that H. Kohnstamm,
16   which is now the third party plaintiff here, was a
17   corporate sham.  There's no basis in the law that H.
18   Kohnstamm now sends in Color, the third party
19   plaintiff, can turn around and sue its former
20   directors, its former minority shareholders.
21               It doesn't make any sense.  They might be
22   able to sue them for a breach of fiduciary duty, if
23   they thought there was a breach, and the statute of
24   limitations hadn't run.  But they don't have that
25   claim, they haven't alleged that claim.  What is

Krumholz - Argument                          25

1    alleged, is that they're asking this Court to invoke --
2    or allow them to proceed on a claim to invoke the
3    extraordinary remedy of piercing the corporate veil,
4    based on the status of the moving third party
5    defendants as shareholders, and they were minority
6    shareholders, absent any allegation of fraud.
7                Absent any allegation of any injustice, and
8    absent any allegation that the corporation was treated
9    as a sham.
10               Thank you.
11               MR. KRUMHOLZ:  Just a few points in rebuttal,
12   as well, Your Honor.  I think there are a couple of
13   misstatements.  If the ECRA letter of
14   non-applicability had not been granted, the
15   responsibility for -- and the deal had gone through,
16   the responsibility for the remediation would have been
17   with Sensient.
18               Sensient became H. Kohnstamm, the company
19   that operated the facility.  They would have been
20   responsible for the remediation.  And that's why I made
21   the point earlier that it was in their interest, indeed
22   their insistence, that this facility be taken out of
23   the transaction, so that they could avoid that
24   responsibility.
25               Similarly, down the road, it was never the

Krumholz - Argument                                26

1    responsibility of the shareholders of General Color for
2    the remediation of the Camden facility.  It was the
3    responsibility of the company itself, General Color,
4    for the remediation.
5              I think, throughout the arguments, both here
6    and in their briefs, the third party plaintiffs
7    confused -- conflate this idea of beneficial owners and
8    legal owners.
9              If it were a simple case, which I'd like to
10   suggest to you now, it would be more easily
11   illustratable that this is not the case.  If, for
12   example, Mr. Bogdonoff and I were shareholders in a
13   company, which owned a facility, and we wanted to
14   transfer the ownership of that facility to another
15   company that he and I owned, we would do that and we
16   would go to DEP and we would say, this is a corporate
17   reorganization, because the beneficial owners Mr.
18   Bogdonoff and I, are the same before and the same
19   after.  The only thing that's changed is a blue company
20   to a red company.
21             And DEP likely would say, yes, there's not an
22   ECRA event here.  That's essentially what happened
23   here, if you strip the details away.  That's
24   essentially what happened.  And on that basis, the
25   plaintiffs are arguing, that subjects those beneficial


Feltoon - Argument                                 27

1    owners to liability.  In my hypothetical, it would
2    subject Mr. Bogdonoff and me to liability, even though,
3    as in this case, there is no allegation of any fraud,
4    any wrongdoing, any error in the ECRA filing, any alter
5    ego, or similar theory that our law traditionally
6    requires for piercing the veil.
7              So all DEP did was say, these are the facts,
8    but the fact that the beneficial owners haven't changed
9    -- haven't changed, doesn't make them in any way
10   liable.  That's the only basis on which this claim is
11   brought.  And that's why we submit to you as matter of
12   law on the motion to dismiss, since there are no facts
13   that could be established to prove that claim.  Since
14   the law doesn't support piercing the veil under these
15   facts, there can be no judgment awarded at the end of
16   the day for the third party plaintiffs.  And,
17   therefore, a motion to dismiss now would be
18   appropriate.
19             MR. FELTOON:  Your Honor, I didn't rise
20   before, but since Mr. Bogdonoff mentioned my client,
21   I'll just make a brief comment.
22             He mentioned that my client Abby Kohnstamm
23   and her husband Peter, in not purchasing General Color
24   shares recognized the environmental problems, that's a
25   gross misstatement of the record, which he even

Bogdonoff - Argument                              28

1   recognizes, Mr. Bogdonoff, in his brief at page 10.
2           All my clients recognize was that his client,
3   Universal Foods, had said they believed there were
4   environmental concerns.  Both Abby and Peter Kohnstamm,
5   and all of the other moving third party defendants,
6   have put in sworn certifications saying they, all of
7   them, had no personal knowledge of any environmental
8   issues at the site.
9           And the only thing that anyone knew was that
10  Universal believed there may.  And that record, as to
11  my client and my colleagues clients, is undisputed.
12  Thank you, Your Honor.
13          MR. BOGDONOFF:  Your Honor, if I may?  If I
14  misstated the record with respect to Abby and Peter
15  Kohnstamm, I stand corrected and did not want to
16  mislead the Court.
17          The -- in fact, the affidavits do say that
18  they recognized that Universal had no interest in this
19  because of the environmental issues.  And ultimately,
20  they elected not to take the stock.  And I think that's
21  a fair characterization of what it was that was done.
22          In contrast to what Mr. Stoviak said, there
23  are allegations, Your Honor, in the third party
24  complaint with respect to misuse of the corporate form.
25  At paragraph 37, the allegation reads:

Bogdonoff - Argument                              29

1           "The above referenced representations and
2       actions of third party defendants evidence a level
3       of control over H. Kohnstamm & Company, Inc. and
4       General Color Company, such that these
5       corporations were mere instrumentalities, or alter
6       egos of the Kohnstamm family shareholders, third
7       party defendants."
8           And at paragraph 38, Your Honor, the
9   allegation is that the third party defendants abused
10  the corporate form to further their personal interests.
11  So there are allegations of record that directly
12  address the points that Mr. Stoviak made.
13          With respect to the --
14          THE COURT:  Where's the proof?
15          MR. BOGDONOFF:  Well, Your Honor, the -- as a
16  matter of pleading, the pleadings are sufficient with
17  respect --
18          THE COURT:  I can charge the Bishop of Boston
19  with bothering my child.  But, you know, I have to
20  prove it.
21          MR. BOGDONOFF:  Well, ultimately it will be
22  our burden to prove those things, Your Honor.  And
23  that's what discovery and trials are all about.
24          However, Your Honor, with respect to a motion
25  to dismiss, the standard is, does it fairly apprise our

Bogdonoff - Argument                              30

1    adversaries of the nature of the claims to be brought
2    against them.  In essence, it's a -- we've alleged all
3    the allegations that I've described with respect to the
4    ECRA submittals.  These are based on the ECRA
5    submittals and it's the same -- of interest that these
6    parties asked be recognized.
7              In other words, that there was Kohnstamm,
8    General Color and the Kohnstamm family shareholders and
9    they were essentially the same, or substantial
10   continuation of that former entity.
11             The -- all of the movants submit that the
12   Kaufman affidavit that was submitted to ECRA was
13   factually correct, so there's no dispute as to that.
14   So that is evidence, Your Honor, of this level of
15   control as we've alleged in the third party complaint.
16             With respect to what Mr. Krumholz said about
17   what the outcome might be if the ECRA
18   non-applicability application were denied, there would
19   have been no transaction, it would not have fallen to
20   Universal.  Universal had no intention of buying this
21   property.  And, in fact, there was a condition
22   precedent of the deal that ECRA non-applicability be
23   determined, and if not, then there would have been no
24   acquisition.
25             Thank you, Your Honor.

Stoviak - Argument/Ruling                         31

1              MR. STOVIAK:  Your Honor, just a quick
2    rejoinder.  Those allegations are simply incantations
3    of conclusory things.  My point is, there are no facts
4    alleged in the complaint that justifies a claim of
5    fraud, treating the corporation as a sham, or alter
6    ego, other than their claim about the ECRA filing,
7    which we've addressed on its face.
8              And based on the documents attached to the
9    complaint, doesn't justify invoking the extraordinary
10   remedy of piercing the corporate veil.
11             They do have an obligation to be able to
12   allege facts, if, in fact, they could prove that would
13   justify a claim as a matter of law.  And they haven't
14   done that here.  They've just simply recited the
15   conclusions.
16             THE COURT:  They recited the case law.
17             MR. FELTOON:  Pardon me?
18             THE COURT:  They recited the case law.  Those
19   things which must be proven in order to pierce the
20   corporate veil.  Such as, was a mere instrumentality,
21   or alter ego of the shareholders, or the shareholders
22   abused the corporate form to perpetuate a fraud, or
23   otherwise circumvent the law.
24             That proof must be by clear and convincing
25   evidence, by the way.  And based upon the facts, as if

Ruling                                      32

1    have, in these briefs and in your arguments, I will
2    dismiss those complaints, that part of the complaints
3    where the corporate veil is sought to be pierced,
4    because I see no facts alleged which would support a
5    claim that the corporation was a mere instrumentality
6    or alter ego of the shareholders.
7             At most, you had two of them, Richard and
8    Kenneth, who were directors of the corporations.  They
9    were in a position as directors to do something.  I
10   don't know what they did or didn't do.  But as far as
11   minority shareholders, there's no proof of the mere
12   instrumentality or alter ego of the shareholders when
13   the corporation did what it did, or didn't do what it
14   should have done.
15            And also there are no facts before the Court
16   which would show that the shareholders abused the
17   corporate form to perpetuate -- or perpetrate, I'm
18   sorry, a fraud, or otherwise to circumvent the law.
19            And as I stated earlier, those proofs would
20   have to be by clear and convincing evidence.  So the
21   corporate veil is not pierced.  As far as dismissing as
22   to the individual shareholders, I find this Court has
23   no jurisdiction of those shareholders.
24            I think, one, on the affidavits I've read
25   only one individual stated that he had ever been to New

Ruling                                      33

1    Jersey.  And I think he came to Camden New Jersey on
2    one occasion.  For what reason, I forget.  But one of
3    the -- and he's probably -- it's either Richard or
4    Kenneth did come to New Jersey.  I don't know which one
5    it was.  But they did come to New Jersey.  And for what
6    reason, I even forget that.  But the -- as far as the
7    individual minority shareholders are concerned, I will
8    grant your motions, there being no personal
9    jurisdiction, no minimum contacts, no contacts, outside
10   of other than the one individual, and I forget which
11   one that was.
12            But still and all there's insufficient
13   contacts with the State of New Jersey to give New
14   Jersey a jurisdiction over that individual.
15            And I think that's it, isn't it?
16            MR. STOVIAK:  Yes, Your Honor.  Thank you.
17            THE COURT:  Are you going to bring the action
18   in New York to pierce the veil?
19            MR. BOGDONOFF:  Excuse me, Your Honor?
20            THE COURT:  Are you going to bring the action
21   in New York to pierce the veil?
22            MR. BOGDONOFF:  We'll be looking into all of
23   our recourse Your Honor.
24            THE COURT:  This was before Fratto, Judge
25   Fratto, and he sent this back to New York, didn't he?

Colloquy                                    34

1          MR. BOGDONOFF:  That was a different matter,
2     Your Honor.
3          THE COURT:  Another one?
4          MR. BOGDONOFF:  Yeah.  And I --
5          COUNSEL:  The insurance case that he sent
6     back to New York.
7          MR. BOGDONOFF:  I think that was just made
8     subject of appeal on Tuesday, Your Honor.
9          THE COURT:  I guess this one will be, too.
10    That's all right.
11         MR. STOVIAK:  Thank you, Your Honor.
12         MR. BOGDONOFF:  Thank you, Your Honor.
13         (Case adjourned)
14                    * * * * *
15


                                                35

1                    CERTIFICATION
2
3     I, Josette M. Jones, the assigned transcriber, do hereby
4     certify that the foregoing transcript of proceedings on
5     tape number 1, February 3, 2006, index number from 1999 to
6     4956, is prepared in full compliance with the current
7     Transcript Format for Judicial Proceedings and is a true
8     and accurate compressed transcript of the proceedings as
9     recorded.
10
11         Signature:    _____
12                       JOSETTE M. JONES
13                       AOC #457
14
15                       DIANA DOMAN TRANSCRIBING
16
17    Date: _____

# EXHIBIT B

**SAUL EWING LLP**
A Delaware LLP
750 College Drive East, Suite 100
Princeton, NJ 08540
(609) 452-3100
Attorneys for Third Party Defendants Daniel Frank Kohnstamm, Elizabeth Bryan Kohnstamm, Joshua G. Kohnstamm, Mary L.
Kohnstamm, Paul Kenneth Kohnstamm, Peter L. Kohnstamm, Ricka Robb Kohnstamm and Adam Michael Kohnstamm

**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Attorneys for Third Party Defendants David Kohnstamm, Jeffrey Kohnstamm, John Kohnstamm, Kevin Kohnstamm and Richard
L. Kohnstamm

**CONRAD, O'BRIEN, GELLMAN & ROHN, P.C.**
Laurel Oak Corporate Center
1000 Haddonfield-Berlin Road, Suite 202
Voorhees, NJ 08043
(856) 309-3373
Attorneys for Third Party Defendant Abby F. Kohnstamm



FILED
MAR 2 2 2006
CAMDEN COUNTY SUPERIOR COURT

| | |
|---|---|
| PLEASANT GARDENS REALTY CORPORATION, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION - CAMDEN COUNTY |
| Plaintiff, | DOCKET NO.: CAM-L-6579-03 |
| v. | Civil Action |
| H. KOHNSTAMM & COMPANY, INC., et al., | *Amended* ORDER DISMISSING THIRD PARTY COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| Defendants, | |
| SENSIENT COLORS INC., | |
| Defendant/Third Party Plaintiff, | |
| v. | |
| DAVID C. BEAL, et al. | |
| Third Party Defendants. | |

THIS MATTER having been brought to the Court by Joint Motion of the Moving Third

Party Defendants to dismiss the Third Party Complaint in the above captioned matter for lack of

personal jurisdiction and for failure to state a claim upon which relief may be granted, and the

court having considered the submissions and argument of the parties, and for good cause shown:

IT IS ORDERED on this _22_ day of ___March___, 2006, that the Moving

Third Party Defendants' Motion be and hereby is GRANTED. The Third Party Complaint is

DISMISSED WITH PREJUDICE.

_____
CHARLES A. LITTLE, J.S.C.

_____ Opposed

_____ Unopposed

-2-

# EXHIBIT C

Michael A. Bogdonoff, Esq.
John M. Ix, Esq.
**DECHERT LLP**
PRINCETON PIKE CORPORATE CENTER
(MAIL TO)        P.O. BOX 5218, PRINCETON, NEW JERSEY 08543-5218
(DELIVER TO)    997 LENOX DRIVE, BUILDING THREE, SUITE 210
                     LAWRENCEVILLE, NEW JERSEY 08648
(609) 620-3200
ATTORNEYS FOR DEFENDANTS H. Kohnstamm & Company, Inc., Warner-Jenkinson Company, Inc., Sensient Colors Inc.,
Sensient Technologies Corporation, formerly known as Universal Foods Corporation, and Universal Foods Corporation

---

| | |
|---|---|
| PLEASANT GARDENS REALTY CORPORATION | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – CAMDEN COUNTY |
| Plaintiff, | DOCKET NO. L 6579-03 |
| v. | Civil Action |
| H. KOHNSTAMM & COMPANY, INC.; WARNER-JENKINSON COMPANY, INC.; SENSIENT COLORS INC.; SENSIENT TECHNOLOGIES, formerly known as Universal Foods Corporation; UNIVERSAL FOODS CORPORATION; GENERAL COLOR COMPANY; and JOHN SMITH COMPANIES/INDIVIDUALS 1-20 (fictitious names); J/S/A | **THIRD-PARTY COMPLAINT** |
| Defendants. | |
| SENSIENT COLORS INC., | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| DAVID C. BEAL; EMILY K. BEAL; ABBY F. KOHNSTAMM; DANIEL FRANK KOHNSTAMM; DAVID KOHNSTAMM; ELIZABETH BRYAN KOHNSTAMM; JEFFREY KOHNSTAMM; JOHN | |

KOHNSTAMM; JOSHUA G.          :
KOHNSTAMM; KEVIN KOHNSTAMM;   :
MARY L. KOHNSTAMM; PAUL       :
KENNETH KOHNSTAMM; ESTATE OF  :
PAUL L. KOHNSTAMM; PETER L.   :
KOHNSTAMM; SARAH FRANCIS      :
KOHNSTAMM; RICHARD L          :
KOHNSTAMM; RICKA ROBB         :
KOHNSTAMM; ELIZABETH K. OGDEN;:
RICHARD L. OGDEN; THOMAS H.   :
OGDEN; ADAM MICHAEL           :
KOHNSTAMM                     :
                              :
                              :
                Third-Party   :
                Defendants.   :

## THIRD-PARTY COMPLAINT

Defendant in the above-entitled action Sensient Colors Inc., as third-party plaintiff, having been granted leave pursuant to an Order dated June 21, 2005, complains of David C. Beal, Emily K. Beal, Abby F. Kohnstamm, Daniel Frank Kohnstamm, David Kohnstamm, Elizabeth Bryan Kohnstamm, Jeffrey Kohnstamm, John Kohnstamm, Joshua G. Kohnstamm, Kevin Kohnstamm, Mary L. Kohnstamm, Paul Kenneth Kohnstamm, Paul L. Kohnstamm, Peter L. Kohnstamm, Sarah Francis Kohnstamm, Richard L Kohnstamm, Ricka Robb Kohnstamm, Elizabeth K. Ogden, Richard L. Ogden, Thomas H. Ogden, and Adam Michael Kohnstamm (hereinafter sometimes collectively referred to as "Kohnstamm Family Shareholders"), as Third-Party Defendants, and alleges as follows:

1.   Plaintiff Pleasant Gardens Realty Corporation has commenced an action against Sensient Colors, Inc. filed on March 12, 2004, for the causes of action set forth in the complaint. A copy of such complaint is attached as Exhibit A and incorporated by reference.

2.     The claims contained in this Third-Party Complaint arise out of the same transaction or occurrence that is the subject matter of Plaintiff's Complaint.

## I.     PARTIES

3.     On information and belief, Third-Party Defendant David C. Beal presently resides at 139 Beaconsfield Road, Apt. 6, Brookline, Massachusetts 02146.

4.     On information and belief, Third-Party Defendant Emily K. Beal presently resides at 139 Beaconsfield Road, Apt. 6, Brookline, Massachusetts 02146.

5.     On information and belief, Third-Party Defendant Abby F. Kohnstamm presently resides at 15 Ocean Avenue, Larchmont, New York 10538.

6.     On information and belief, Third-Party Defendant Daniel Frank Kohnstamm presently resides at 573 Somers Avenue, Whitefish, Montana 59937.

7.     On information and belief, Third-Party Defendant David Kohnstamm presently resides at 4805 SW Chestnut Pl., Beaverton, Oregon 97005.

8.     On information and belief, Third-Party Defendant Elizabeth Bryan Kohnstamm presently resides at 573 Somers Avenue, Whitefish, Montana 59937.

9.     On information and belief, Third-Party Defendant Jeffrey Kohnstamm presently resides at 4618 SE River Dr., Milwaukee, Oregon 97267.

10.     On information and belief, Third-Party Defendant John Kohnstamm presently resides at 430 Iron Mountain Blvd., Lake Oswego, Oregon 97034.

11.   On information and belief, Third-Party Defendant Joshua G. Kohnstamm presently resides at 36111 Wells Creek Trl., Goodhue, Minnesota 55027.

12.   On information and belief, Third-Party Defendant Kevin Kohnstamm presently resides at 3002 NW Luray Circus, Portland, Oregon 97210.

13.   On information and belief, Third-Party Defendant Mary L. Kohnstamm presently resides at 118 Millport Avenue, New Canaan, Connecticut 06840.

14.   On information and belief, Third-Party Defendant Paul Kenneth Kohnstamm presently resides at 2047 Selby Avenue, St. Paul, Minnesota 55104.

15.   Third-Party Defendant Paul L. Kohnstamm is deceased. He resided at presently 118 Millport Avenue, New Canaan, Connecticut 06840 at the time of his death. His estate is in probate in Connecticut. On information and belief, the executor of his estate is Mary L. Kohnstamm.

16.   On information and belief, Third-Party Defendant Peter L. Kohnstamm presently resides at 15 Ocean Avenue, Larchmont, New York 10538.

17.   On information and belief, Third-Party Defendant Sarah Francis Kohnstamm presently resides at 15 Ocean Avenue, Larchmont, NY 10538.

18.   On information and belief, Third-Party Defendant Richard L. Kohnstamm presently resides at 11476 SW Riverwood Road, Portland, Oregon 97219.

19.    On information and belief, Third-Party Defendant Ricka Robb Kohnstamm presently resides at 36111 Wells Creek Trl., Goodhue, Minnesota 55027.

20.    On information and belief, Third-Party Defendant Elizabeth K. Ogden presently resides at 79 Winfield Avenue, Harrison, New York 10528.

21.    On information and belief, Third-Party Defendant Richard L. Ogden presently resides at 117 Wildwing Ext. Pk., Catskill, New York 12414.

22.    On information and belief, Third-Party Defendant Thomas H. Ogden presently resides at 79 Winfield Avenue, Harrison, New York 10528.

23.    On information and belief, Third-Party Defendant Adam Michael Kohnstamm presently resides at 2047 Selby Ave., St. Paul, MN 55104.

## II.    SUBSTANTIVE ALLEGATIONS

24.    On or about September 7, 1988, H. Kohnstamm & Company, Inc. transferred the property at 31st Street and Lemuel Avenue, Camden, New Jersey (hereinafter "the Camden Property") to its wholly owned subsidiary, General Color Company, a New Jersey corporation and a defendant in this action.

25.    After the transfer of the Camden Property, H. Kohnstamm & Company, Inc. transferred the stock of General Color Company, tax free, to the Kohnstamm family members who were shareholders of H. Kohnstamm & Company, Inc., the Kohnstamm Family Shareholders (i.e., the Third-Party Defendants). This had the effect of dissolving the parent-

subsidiary relationship that had previously existed between H. Kohnstamm & Company, Inc. and General Color Company.

26.    The stock of H. Kohnstamm & Company, Inc. was then acquired by Universal Foods Corporation, a Wisconsin corporation, in 1988 (hereinafter, the transfer of the Camden Property to General Color Company, the transfer of the stock of General Color Company to the Kohnstamm Family Shareholders and the sale of the stock of H. Kohnstamm & Company to Universal Foods Corporation shall be referred to as the "1988 Transaction"). The effect of this 1988 Transaction was to make H. Kohnstamm & Company, Inc. a wholly-owned subsidiary of Universal Foods Corporation.

27.    Universal Foods Corporation did not acquire any interest in General Color Company, which was no longer a subsidiary of H. Kohnstamm & Company, Inc. at the time Universal Foods Corporation acquired H. Kohnstamm & Company, Inc., nor did Universal Foods Corporation acquire any liability or interest associated with the operations of H. Kohnstamm & Company, Inc. or General Color Company on the Camden Property.

28.    H. Kohnstamm & Company, Inc., a New York corporation, changed its name to Warner-Jenkinson Company, Inc. on or about September 18, 1990. Warner-Jenkinson Company, Inc. changed its name to Sensient Colors Inc. on or about December 31, 2002.

29.    Section 5.3 of the agreement controlling the 1988 Transaction (hereinafter "1988 Transaction Agreement") provided that the "Selling Shareholders" and H. Kohnstamm & Company, Inc. would obtain a determination from the New Jersey Department of Environmental

Protection ("NJDEP") that the Environmental Cleanup Responsibility Act ("ECRA") did not apply to the 1988 Transaction. The 1988 Transaction Agreement further provided that the Selling Shareholders would cause H. Kohnstamm & Company, Inc. to comply with this obligation. A copy of the 1988 Transaction Agreement is attached as Exhibit B.

30. Each of the Third-Party Defendants was a Selling Shareholder and a Kohnstamm Family Shareholder under the 1988 Transaction Agreement.

31. Each of the Third-Party Defendants executed a shareholder agreement that outlined the transfer of the Camden Property to General Color Company and the distribution of General Color Company shares to the Third-Party Defendants. A copy of the shareholder agreement is attached as Exhibit C.

32. Pursuant to Section 5.3 of the 1988 Transaction Agreement, H. Kohnstamm & Company, Inc. and the Selling Shareholders (including the Third-Party Defendants) applied to the NJDEP for an ECRA letter of non-applicability for: (1) the transfer of the Camden Property by H. Kohnstamm & Company, Inc. to General Color Company; and (2) the transfer of the stock of General Color Company to the Kohnstamm Family Shareholders (i.e., Third-Party Defendants).

33. That application asked the NJDEP to disregard the corporate form and treat the formal change of ownership of the Camden Property from H. Kohnstamm & Company, Inc. to General Color Company as a corporate reorganization not substantially affecting the ownership of the Camden Property. The application also asked the NJDEP to disregard the

corporate form and treat the formal change of ownership of General Color Company from H.

Kohnstamm & Company, Inc. to the Kohnstamm Family Shareholders as a corporate

reorganization not substantially affecting the ownership of the Camden Property.

34.    In support of those requests, H. Kohnstamm & Company, Inc. and the

Selling Shareholders (including the Third-Party Defendants) represented in the application that

the beneficial and equitable ownership of the Camden Property would remain with the

Kohnstamm Family Shareholders (i.e., the Third-Party Defendants) because: (1) H. Kohnstamm

& Company, Inc. was the parent of General Color Company; (2) the Kohnstamm Family

Shareholders (i.e., the Third-Party Defendants) owned approximately 81% of the H. Kohnstamm

& Company, Inc. stock; (3) after the stock distribution, they would own 100% of General Color

Company; and (4) both before and after the proposed transaction the Kohnstamm Family

Shareholders (i.e., the Third-Party Defendants) would own the controlling interest in Camden

Property and would control General Color Company.

35.    On the basis of the representations made by and on behalf of H.

Kohnstamm & Company, Inc. and the Selling Shareholders (including the Third-Party

Defendants), NJDEP issued ECRA letters of non-applicability regarding the transactions

proposed by the 1988 Transaction Agreement. Copies of the letters of non-applicability and the

applications upon which they were issued are attached as Exhibit D.

36.    But for the representations made by and on behalf of H. Kohnstamm &

Company, Inc. and the Selling Shareholders (including the Third-Party Defendants) in their

ECRA application for letters of non-applicability, NJDEP would have required in 1988 an ECRA

environmental investigation and remediation of the Camden Property. The cost of that environmental investigation and remediation would have directly or indirectly reduced the compensation paid to the Selling Shareholders (including the Third-Party Defendants) in exchange for their H. Kohnstamm & Company, Inc. stock.

37.    The above-referenced representations and actions of Third-Party Defendants evidence a level of control over H. Kohnstamm & Company, Inc. and General Color Company such that these corporations were mere instrumentalities, or alter egos, of the Kohnstamm Family Shareholders, Third-Party Defendants.

38.    The Third-Party Defendants abused the corporate form to further their personal interests.

39.    The Third-Party Defendants used General Color Company and H. Kohnstamm & Company, Inc. to defeat the ends of justice, as justice would have required H. Kohnstamm & Company, Inc. to either investigate and remediate the Camden Property prior to its transfer to General Color Company or enter into an agreement by which General Color Company and/or the Selling Shareholders (including the Third-Party Defendants) would assume the obligation to investigate and remediate the Camden Property after the transfer.

40.    Accordingly, it is appropriate to pierce the corporate veil and impose liability on the individual Kohnstamm Family Shareholders, Third-Party Defendants.

41.    Third-Party Defendants should be held responsible individually for the actions and environmental liabilities of H. Kohnstamm & Company, Inc. prior to the transfer of the Camden Property in 1988.

42.    Third-Party Defendants should be held responsible individually for the actions and environmental liabilities of General Color Company after the transfer of the Camden Property in 1988.

43.    Upon information and belief, if not for sworn statements submitted to the NJDEP, H. Kohnstamm & Company, Inc. would have been required to either investigate and remediate the Camden Property prior to its transfer to General Color Company or enter into an agreement by which General Color Company and/or the Selling Shareholders (including the Third-Party Defendants) would assume the obligation to investigate and remediate the Camden Property after the transfer.  Either way, the Camden Property would have been investigated and remediated beginning in 1988.

## COUNT I
## CONTRIBUTION UNDER THE SPILL ACT

44.    Sensient Colors, Inc. incorporates each of the allegations in Paragraphs 1 through 43 as if fully set forth herein.

45.    Under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. (the "Spill Act"), any person responsible for a discharge of hazardous substances is strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.

46.    The term "person responsible for a discharge" is defined at N.J.A.C. 7:1E-1.6 to include: (a) any person whose act or omission results or has resulted in a discharge; (b) each owner or operator of a facility from which a discharge has occurred; (c) any person who owns or controls any hazardous substance which is discharged; (d) any person who has directly or indirectly caused a discharge; and (e) any person who has allowed a discharge to occur.

47.    The ECRA application submitted to the NJDEP by or on behalf of each of the Third-Party Defendants admitted that they, the Kohnstamm Family Shareholders, were the beneficial and equitable owners of the Camden Property. Accordingly, they are persons responsible for a discharge.

48.    The ECRA application submitted to the NJDEP by or on behalf of each of the Third-Party Defendants admitted that they, the Kohnstamm Family Shareholders, controlled H. Kohnstamm & Company and, therefore, the Camden Property. Accordingly, they are persons responsible for a discharge.

49.    To the extent that it is determined that Sensient Colors Inc. is required to pay for cleanup and removal costs at the property known as Lot 1, Block 983 and Lots 1 and 20 of Block 985 on the Municipal Tax Map of the City of Camden, Camden County, New Jersey (hereinafter "Plaintiff's Property"), Third-Party Defendants are liable in contribution to Sensient Colors Inc. pursuant to the Spill Act.

WHEREFORE, Sensient Colors, Inc. demands judgment against Third-Party Defendants for contribution under the Spill Act, all costs of suit, attorney's fees and any such other relief as this Court deems just and equitable.

## COUNT II
## CONTRIBUTION UNDER THE SPILL ACT-VEIL PIERCING

50.    Sensient Colors Inc. incorporates each of the allegations in Paragraphs 1 through 49 as if fully set forth herein.

51.    The Spill Act provides that a person who has discharged a hazardous substance or is in any way responsible for any hazardous substance shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.

52.    Plaintiff has alleged that Sensient Colors Inc. discharged hazardous substances, as defined in the Spill Act, on or in the vicinity of the Camden Property, and the Plaintiff's Property.

53.    Plaintiff has alleged that, as a result of such discharges, Sensient Colors Inc. is liable under the Spill Act for the environmental contamination at Plaintiff's Property.

54.    Since the Third-Party Defendants avoided the costs associated with an environmental investigation and remediation of contamination at and emanating from the Camden Property by representing to the NJDEP that there was no relevant distinction between themselves, as Kohnstamm Family Shareholders, and H. Kohnstamm & Company, Inc. (now

- 12 -

known as Sensient Colors Inc.) or General Color Company, the liability of the Third-Party

Defendants under the Spill Act is co-extensive with the liability of Sensient Colors Inc. and

General Color Company.

55.    To the extent that it is determined that Sensient Colors Inc. is required to

pay for cleanup and removal costs at Plaintiff's Property, Third-Party Defendants are liable in

contribution to Sensient Colors Inc. pursuant to the Spill Act, including, but not limited to, that

share of liability attributable to General Color Company.

WHEREFORE, Sensient Colors, Inc. demands judgment against Third-

Party Defendants for contribution under the Spill Act, all costs of suit, attorney's fees and any

such other relief as this Court deems just and equitable.

## COUNT III
## CONTRIBUTION UNDER THE JOINT TORTFEASORS CONTRIBUTION ACT

56.    Sensient Colors Inc. incorporates each of the allegations in Paragraphs 1

through 55 as if fully set forth herein.

57.    Pursuant to the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A.

2A:53A-1, et seq., a joint tortfeasor has a right of contribution from any other joint tortfeasor.

58.    In the event that Sensient Colors Inc. is adjudged to be liable with the

other Defendants, jointly and severally, for any judgment, damages, costs or any other expenses

relating to Plaintiff's Property, Sensient Colors Inc. is entitled to and hereby seeks contribution

from the Third-Party Defendants for all such judgments, damages, costs and expenses.

WHEREFORE, Sensient Colors Inc. demands judgment against Third-Party Defendants for contribution under the Joint Tortfeasors Contribution Act, all costs of suit, attorney's fees and any such other relief as this Court deems just and equitable.

## COUNT IV
## COMMON LAW INDEMNIFICATION

59.    Sensient Colors Inc. incorporates each of the allegations in Paragraphs 1 through 58 as if fully set forth herein.

60.    To the extent that environmental contamination of Plaintiff's Property was caused or contributed to by operations at the Camden Property, such operations occurred prior to the 1988 acquisition of H. Kohnstamm & Company, Inc. (now known as Sensient Colors Inc.) by Universal Foods Corporation. Prior to 1988, H. Kohnstamm & Company, Inc. was controlled by the Third-Party Defendants and they were the beneficial and equitable owners of the Camden Property. As between Sensient Colors Inc. and Third-Party Defendants, responsibility, if any, for the relief sought in the Complaint rests on Third-Party Defendants because of their primary responsibility for the environmental condition of the Camden Property and any contamination of Plaintiff's Property related thereto. Accordingly, Third-Party Defendants are obligated to indemnify Sensient Colors Inc. whose responsibility, if any, is passive and secondary, for any and all sums which Defendants have paid or may be compelled to pay, including attorney's fees, if Sensient Colors Inc. is held liable for any relief sought in the Complaint.

WHEREFORE, Sensient Colors Inc. demands judgment against Third-Party Defendants for indemnification, all costs of suit, attorney's fees and any such other relief as this Court deems just and equitable.

## COUNT V
## UNJUST ENRICHMENT

61.    Sensient Colors Inc. incorporates each of the allegations in Paragraphs 1 through 60 as if fully set forth herein.

62.    Third-Party Defendants have been enriched by their acts and omissions which allowed them to avoid the costs of investigating and remediating the environmental condition of the Camden Property and any contamination caused or contributed to by the operations of H. Kohnstamm & Company, Inc.

63.    These acts and omissions allowed Third-Party Defendants to save substantial sums they should have expended in order to investigate and remediate pursuant to ECRA environmental contamination arising from the operation of the business they owned and controlled.

64.    These acts and omissions also allowed Third-Party Defendants to receive substantially more from Universal Foods Corporation in exchange for their shares of H. Kohnstamm & Company, Inc. than they would have received if the conditions at and emanating from the Camden Property had been properly investigated and remediated prior to the property transfer.

WHEREFORE, Sensient Colors Inc. demands judgment against Third-Party Defendants for disgorgement of Third-Party Defendants' profits from the sale of their H. Kohnstamm & Company, Inc. shares to Universal Foods Corporation (which were monies improperly retained/obtained as aforesaid), all costs of suit, attorney's fees and any such other relief as this Court deems just and equitable.

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify, in accordance with R. 4:5-1, that there are no other proceedings either pending or contemplated with respect to the matter in controversy in this action and that, based on the information currently available to me, I know the identities of no other parties who should be joined in this action.

Respectfully submitted,

Michael A. Bogdonoff
John M. Ix

DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543-5218

Attorneys for Defendants,
H. Kohnstamm & Company, Inc., Warner-Jenkinson Company, Inc., and Sensient Colors Inc.

Dated: July 18, 2005

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1, Sensient Colors Inc. designates Michael A. Bogdonoff as trial counsel in the within matter.

Respectfully submitted,

Michael A. Bogdonoff
John M. Ix

DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543-5218

Attorneys for Defendants,
H. Kohnstamm & Company, Inc., Warner-
Jenkinson Company, Inc., and Sensient Colors Inc.

Dated: July 18, 2005

## CERTIFICATION OF SERVICE

Pursuant to R. 4:6-1, I certify that a copy of the within Third Party Complaint was

served upon counsel for the Plaintiff within the time and in the manner required by the Rules of

Court, via first class mail to the following address:

      Joseph P. McGroarty, Esq.
      Fitzgerald, McGroarty & Lipari
      401 New Road, Suite 104
      Linwood, NJ 08221

      DECHERT LLP
      Attorneys for Defendants H. Kohnstamm &
      Company, Inc., Warner-Jenkinson Company, Inc.
      and Sensient Colors Inc.

      By: _____
          John M. Ix

Dated:  July 18, 2005