**SAUL EWING LLP**
A Delaware LLP
750 College Drive East, Suite 100
Princeton, NJ 08540
(609) 452- 3100
Attorneys for Defendants Peter L. Kohnstamm and Elizabeth K. Ogden

| | | |
|---|---|---|
| SENSIENT COLORS INC., | : | UNITED STATES DISTRICT COURT |
| | : | SOUTHERN DISTRICT OF NEW YORK |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No.  07 CIV 7846 (LAP) |
| | : | |
| ABBY F. KOHNSTAMM; PETER L. | : | CIVIL ACTION |
| KOHNSTAMM; SARAH F. | : | |
| KOHNSTAMM; ELIZABETH K. | : | (Filed Electronically) |
| OGDEN; RICHARD L. OGDEN; | : | |
| THOMAS H. OGDEN; JOHN DOE | : | |
| INDIVIDUALS 1-20 (fictitious | : | |
| names); and ABC COMPANIES 1-20 | : | |
| (fictitious names), | : | |
| | : | |
| Defendants. | : | |

---

## MEMORANDUM OF LAW OF CERTAIN DEFENDANTS IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## I.    **INTRODUCTION**

In its voluminous brief in opposition to Defendants' Motion to Dismiss, Plaintiff Sensient

Colors attempts both to breathe life into the anemic allegations of the Amended Complaint, and

to obfuscate well-established legal principles that foreclose Plaintiff's claims as a matter of law.

In so doing, Plaintiff manages to make one thing abundantly clear: that Plaintiff will apparently

stop at nothing -- even concocting a purported Kohnstamm family "conspiracy" devoid of any

support -- in its futile effort to avoid the environmental cleanup liabilities that it inartfully and

unsuccessfully attempted to avoid in orchestrating the 1988 Transaction.

By electing to acquire the stock of H. Kohnstamm & Co., Inc. ("H. Kohnstamm") instead

of its assets, Plaintiff exposed itself to potential CERCLA liability for environmental remediation

of the Camden Property.  Under CERCLA, it is beyond dispute that H. Kohnstamm was

potentially liable as an owner and operator of the Camden Property up to the time of the 1988

Transaction.  The spin off of the Camden Property to General Color immediately prior to

Universal Foods' acquisition of H. Kohnstamm's stock as part of the 1988 Transaction did

absolutely nothing to insulate H. Kohnstamm, now renamed Plaintiff Sensient Colors, from this

liability, as a "person who at the time of disposal of any hazardous substance owned or operated

any facility at which such hazardous substances were disposed of."  CERCLA, 42 U.S.C. §

9601(a)(2).

In fact, detailed indemnification provisions were included in the 1988 Transaction

Agreement, which specifically anticipated that Plaintiff could be pursued for such environmental

liabilities thereafter, in which case Plaintiff had an ability to seek indemnification from the

"Selling Shareholders" of H. Kohnstamm for a limited period of time.[1]  These indemnification

---

[1]    See 1988 Transaction Agreement at 1, 91-92 (obligating "Selling Shareholders," defined
        as "the shareholders of [H. Kohnstamm] who have executed this Agreement," to

provisions fully expose the fallacy of Plaintiff's contention, see Pl.'s Br. at 3-4, that the 1988

Transaction was "expressly structured" to assure that Plaintiff would never face such liabilities.

By their negotiated terms, the indemnification provisions of the 1988 Transaction Agreement

provided indemnification to Plaintiff from environmental claims relating to the Camden Property

only if made within five years after the close of the 1988 Transaction. Now far out of time to

contractually shift its cleanup liabilities for the Camden Property to the "Selling Shareholders"

through the indemnification provisions, Plaintiff has brought the current claims against

Defendants here -- none of whom even was a signing "Selling Shareholder" in the 1988

Transaction Agreement.[2]

The NJDEP's January 27, 1988 response to H. Kohnstamm's initial ECRA Filing

likewise belies Plaintiff's contention that it understood and intended that the structure of the

1988 Transaction would relieve it of environmental liabilities arising from the Camden Property.

In this response, the NJDEP explicitly stated that its determination that ECRA was inapplicable

to the 1988 Transaction "*does not relieve the above referenced [H. Kohnstamm] of any*

*responsibilities under any other environmental statutes, regulations or permits.*" (emphasis

added).[3]

Nevertheless, through its Amended Complaint, Plaintiff is now attempting to pursue

unprecedented CERCLA claims, piercing the corporate veil claims and civil conspiracy claims

against former individual minority shareholders of H. Kohnstamm. Significantly, the Amended

---

indemnify Universal Foods for any claim "made within five (5) years after the Closing
Date with respect to environmental or health matters and relating to the Camden, New
Jersey real property being transferred by [H. Kohnstamm] to General Color") (Kistler
Dec., Exhibit A).

[2]    See 1988 Transaction Agreement (signature pages) (Exhibit A to Amended Complaint).

[3]    See ECRA Filing (Exhibit C to Amended Complaint).

Complaint does not allege that any of these individual Defendants participated in any way in the creation of the environmental conditions at issue, or that any of them actively participated in the 1988 Transaction, including the company's submissions to the NJDEP on which Plaintiff's claims are grounded. Moreover, the Amended Complaint fails to set forth any allegation to show that these former minority shareholders dominated and abused the corporate form; nor are there any allegations showing that each of these individual Defendants committed overt acts in furtherance of an alleged conspiracy or intentionally participated in the furtherance of an alleged conspiracy. The absence of any such allegations render the Amended Complaint incapable of establishing operator liability under CERCLA, demonstrating any basis for piercing the corporate veil, or stating a viable civil conspiracy claim, mandating dismissal of this case.

Apparently recognizing these fatal deficiencies, Plaintiff makes the incredible argument that Plaintiff's CERCLA claim should still survive Defendants' Motion to Dismiss because "Defendants have failed to establish, through documentary or other evidence, that they had no operation or management role." See Pl.'s Br. at 30. This argument is nothing short of absurd, as under applicable pleading standards it is unequivocally a *Plaintiff's* obligation to allege in good faith the facts necessary to set forth a "plausible" claim -- and not a *Defendant's* obligation to proffer evidence to defeat the factually unsupported claims asserted by Plaintiff.

In sum, given that Plaintiff has wholly failed to state any viable claims for relief, Plaintiff's Amended Complaint is properly dismissed in its entirety.

## II.    LEGAL ARGUMENT

### A.    Plaintiff's Allegations in the Amended Complaint Fundamentally Fail to Satisfy Applicable Pleadings Standards.

Plaintiff contends that its Amended Complaint need only give "fair notice of all claims" and need not allege "specific facts" in support of its claims, based upon the pleading standard set forth in Fed. R. Civ. P. 8(a). See Pl.'s Br. at 12. But Plaintiff's Amended Complaint unequivocally must be supported by factual allegations sufficient "to raise the right to relief above a speculative level," such that the plaintiff's claims are not merely "conceivable," but are "plausible." Bell Atlantic v. Twombly, 127 S. Ct. 1255, 1965, 1974 (2007); see Jones v. Consumer Info. Dispute Resolution, 2007 WL 2398811 (S.D.N.Y. Aug. 16, 2007) (Preska, J.) (recognizing "flexible 'plausibility standard,' which obliges a pleader to amplify [his] claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*") (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  Here, because Plaintiff has wholly failed to amplify its bare, conclusory allegations with factual averments adequate to render its conspiracy theory plausible, Plaintiff's allegations fail to satisfy Rule 8(a), and thereby fail to state any viable claims upon which relief may be granted.  See In Re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (granting motion to dismiss on basis that plaintiff failed to allege facts sufficient to make conspiracy claim plausible).

Here, Plaintiff's theory of a purported "family conspiracy" fails to meet this plausibility standard.  Specifically, Plaintiff attempts to allege a conspiracy among all "Kohnstamm Family Shareholders," but fails to include certain key details, such as the age of the individual shareholders, their relationship to other family member shareholders, and their lack of connection to H. Kohnstamm and General Color.  Such details are well-known to Plaintiff as a result of discovery in the New Jersey Action, but they are omitted from Plaintiff's pleadings here

because they fatally undermine the plausibility of Plaintiff's conspiracy allegations. For example, Paul Kohnstamm (now deceased and not named as a Defendant herein) was Chairman of H. Kohnstamm at the time of 1988 Transaction.[4] At that time, Paul Kohnstamm directly owned 326,925 shares, or more than 32% of the stock of H. Kohnstamm.[5] By contrast, Defendant Sarah Kohnstamm, who Plaintiff concedes was a "minor" at the time of the 1988 Transaction, see Pl.'s Br. at 8 n. 5, held only 2,500 shares, or approximately 0.25% of H. Kohnstamm's stock at the time that the 1988 Transaction was consummated.[6] Plaintiff conspicuously omits from the allegations of its Amended Complaint that Defendant Sarah Kohnstamm was only *three years old* at the time of the 1988 Transaction, and that she was the granddaughter of Chairman Paul Kohnstamm, because doing so would reveal the profound absurdity of Plaintiff's allegation of a conspiracy "to wrongfully avoid responsibility for ... costs associated with ... environmental remediation at ... the Camden Property," see Am. Compl. ¶ 76, between, among others, a grandfather and his toddler granddaughter.

Furthermore, where, as here, Plaintiff seeks to pierce the corporate veil based upon allegations of fraud as the objective of a conspiracy, "the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." EED Holdings v. Palmer Johnson Acq. Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (quoting In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003)). Specifically, in seeking to justify the extraordinary relief of piercing the corporate veil, Plaintiff has spun a tale that the

---

[4]    See 1988 Transaction Agreement (Exhibit A to Amended Complaint).

[5]    See Shareholders Agreement (Exhibit B to Amended Complaint).

[6]    Defendant Sarah Kohnstamm's shares were held by her father, Defendant Peter L. Kohnstamm, "cust. Sarah Francis Kohnstamm, UGMA." See Shareholders Agreement (Exhibit B to Amended Complaint).

Kohnstamm family shareholders, including Defendants here, knowingly and intentionally undertook "concerted efforts" and a "coordinated scheme" to "sidestep state-mandated environmental remediation" of the Camden Property through a "false and fraudulent" ECRA Filing.[7] See Pl.'s Br. at 1-2.  Plaintiff has thus subjected its veil-piercing claim to the particularity requirement of Rule 9(b), which necessitates the pleading of fraud with "particularized facts that give rise to a strong inference that defendants acted with fraudulent intent." EED Holdings, 228 F.R.D. at 512 (citation omitted).  Pleading fraud in compliance with Rule 9(b) likewise requires a plaintiff to "adequately specify the statements he claims were false and misleading, give particulars as to the respects in which he contends the statements were fraudulent, state when and where those statements were made, and identify those responsible for the statements." Scala v. Sequor Group, Inc., 1995 WL 225625, at *3 (S.D.N.Y. Apr. 14, 1995) (Preska, J.).  Because Plaintiff has nowhere alleged (nor could in good faith allege) any facts sufficient to establish fraudulent intent on the part of any of the Defendants, nor any factual details as to any actions taken or statements made specifically by Defendants that are alleged to be fraudulent, the Amended Complaint fails to survive the heightened scrutiny of Rule 9(b), and is properly dismissed. EED Holdings, 228 F.R.D. at 512 (granting motion to dismiss veil-piercing claims based on alleged fraud due to insufficiency of factual allegations of fraudulent intent).

---

[7]     In this regard, Plaintiff repeatedly misrepresents that the ECRA Filing was made by Daniel L. Rabinowitz, Esquire of McCarter & English "on behalf of the Kohnstamm Family Shareholders." See Pl.'s Br. at 6, 7, 26, 28.  As is evident from the ECRA Filing itself, however, Mr. Rabinowitz stated that he "represents H. Kohnstamm," the corporate entity, and expressly made the ECRA Filing on behalf of the company (now renamed Plaintiff Sensient Colors). See ECRA Filing (Exhibit C to Amended Complaint).

**B.**     **Plaintiff's Attempt to Argue that Defendants May Be Held Directly Liable Under CERCLA as Operators of the Camden Property Even If The Corporate Veil Cannot Be Pierced Is Resoundingly Refuted by Applicable Law.**

In its opposition brief, Plaintiff blithely proclaims that "even if the corporate veil could not be pierced, Defendants may still be found liable under CERCLA as 'operators' of the Camden Property." See Pl.'s Br. at 30. Despite Plaintiff's summary proclamation in this regard, there is simply no legal precedent for holding former minority shareholders like Defendants liable under CERCLA for environmental remediation under the circumstances presented here.

The parties appear to agree that the Bestfoods case establishes the applicable legal standard in this regard, in holding that a shareholder is not liable for the costs of an environmental cleanup under CERCLA unless (1) the plaintiff can pierce the corporate veil, or (2) the shareholder "actively participated in, and exercised control over, the operations of the facility." See Bestfoods, 524 U.S. at 55; Pl.'s Br. at 30. Active participation in operations of the facility requires that the shareholder "manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Id. at 66-67. Although Bestfoods dealt with "operator" liability in the context of a corporate shareholder, the federal courts in New York have applied the Bestfoods analysis to individual shareholders as well. See, e.g., Booth Oil Site Admin. Group v. Safety-Kleen Corp., 137 F. Supp.2d 228, 239 (W.D.N.Y. 2000); United States v. Green, 33 F. Supp. 2d 203, 217-18 (W.D.N.Y. 1998) (holding that a shareholder cannot be liable as an operator "unless he directly participated in the management of the facility's pollution control operations[,] including decisions pertaining to the disposal of hazardous substances and compliance with environmental regulations").

In a disingenuous attempt to demonstrate that this standard for CERCLA operator liability is satisfied by the conduct of the Defendants here, Plaintiff makes the sweeping observation in its opposition brief -- yet curiously absent from the Amended Complaint itself -- that "[i]t is undisputed that certain Kohnstamm Family Shareholders and co-conspirators managed and/or conducted the affairs of the Camden Property." See Pl.'s Br. at 30. For the reasons described in detail below, however, Plaintiff's effort to argue that the named Defendants in this matter are liable as CERCLA operators -- not because of any conduct of their own, but rather purely as alleged "co-conspirators" in an amorphous family conspiracy -- is patently groundless, and does not establish any plausible claim against any of the named Defendants. In short, the failure of Plaintiff's Amended Complaint to allege facts showing that any of the individual Defendants "managed, directed, or conducted operations specifically related to pollution" means that Defendants cannot be held directly liable as CERCLA "operators" of the Camden Property as a matter of law, and Plaintiff's claims in this regard are properly dismissed.[8]

**C.    Plaintiff's Attempt to Shift Liability to Defendants By Alleging That They Were Part of a Kohnstamm Family Shareholder Conspiracy To Fraudulently Avoid Environmental Liabilities Is Both Factually Unsupported and Legally Defective.**

Plaintiff's recitation of the "facts" alleged to support the existence of a family conspiracy with a fraudulent intent to evade environmental liabilities is woefully deficient to establish the existence of any plausible claims against Defendants here. First, Plaintiff has failed to plead the existence of any underlying intentional tort, as is necessary to support a claim of conspiracy. Additionally, conspicuously absent from Plaintiff's Amended Complaint is any allegation concerning any direct involvement or "independent culpable behavior" by any of the individual

---

[8]    Plaintiff conducted some discovery with regard to these same Defendants in the New Jersey Action, prior to the Court's dismissal of Plaintiff's claims against them in that case.

Defendants in connection with the conspiracy or the ECRA Filing which was made by and on behalf of H. Kohnstamm,[9] purportedly in furtherance of the alleged conspiracy. The absence of these requisite allegations mandates that Plaintiff's civil conspiracy claim be dismissed. Plaintiff simply cannot, as a matter of law, state a viable claim against Defendants here based on a conclusory allegation of conspiracy, where there is no allegation of any direct involvement or "independent culpable behavior" by these Defendants in the alleged conspiracy, and these Defendants directly held less than 2% of stock of H. Kohnstamm at the time of the 1988 Transaction.[10]

### 1. Civil Conspiracy Does Not Exist As An Independent Tort Under New York Law

Civil conspiracy does not exist as an independent tort under New York law. Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (granting motion to dismiss conspiracy claim where plaintiff failed to state viable causes of action for any alleged torts underlying conspiracy claim). Rather, a claim of civil conspiracy must be grounded upon some viable and properly pled underlying intentional tort, which the defendants allegedly formed a common scheme to commit. Agron v. Douglas W. Dunham, Esq. & Assocs., 2004 WL 691682, at *6 (S.D.N.Y. Mar. 31, 2004) (Preska, J.) (granting motion to dismiss conspiracy claim based on failure to adequately plead commission of any actionable underlying tort).

---

[9] See footnote 7 above.

[10] Even if the shares held in trust for the benefit of Elizabeth Ogden, among others, are included in the calculation, Defendants in this case collectively held approximately 7.25% of stock of H. Kohnstamm at the time of the 1988 Transaction. In addition, even if the shares held by the defendants in the Minnesota action are included in the calculation, the combined holdings are still less than 12% of stock of H. Kohnstamm. See Shareholders Agreement (Exhibit B to Amended Complaint).

Here, while Plaintiff insists that it has "connected its civil conspiracy [claim] to a number of underlying torts," see Pl.'s Br. at 25, Plaintiff fails to identify a single intentional tort among its claims in the Amended Complaint for CERCLA contribution, New Jersey Spill Act contribution, statutory contribution, common law indemnification and unjust enrichment. To the extent that Plaintiff's allegations imply fraud as the intentional tort underlying its conspiracy claim, as noted above, these allegations plainly do not survive scrutiny under the heightened pleading standard of Rule 9(b). See, e.g., Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 506-07 (S.D.N.Y. 2007) (granting motion to dismiss conspiracy claim on basis that plaintiff's allegations of underlying tort of fraudulent concealment failed to satisfy Rule 9(b) pleading standard requiring particularity); Scala, 1995 WL 225625, at *9 (Preska, J.) (granting motion to dismiss conspiracy claim on basis that plaintiff's allegations of underlying fraud were insufficient under Rule 9(b) to state viable freestanding fraud claim). In the absence of any viable underlying intentional tort, then, Plaintiff's conspiracy claim is not cognizable as a matter of law and is properly dismissed.

### 2. Plaintiff's Amended Complaint Fails To Allege The Requisite Elements for a Civil Conspiracy Claim

In addition to requiring the pleading of a viable underlying intentional tort, a claim of civil conspiracy under New York law additionally requires that four basic elements be pled: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) intentional participation by each party in the furtherance of a plan or purpose; and (4) resulting damage or injury. See American Bldg. Maintenance Co. v. Acme Property Services, Inc., 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007); Treppel v. Biovail Corp., 2005 WL 2086339, at *5 (S.D.N.Y. Aug. 30, 2005). Where a plaintiff seeks to state a conspiracy claim against a "nonactor" -- a party having no direct involvement in the acts alleged to constitute the underlying

tort, like the passive minority shareholder Defendants here -- "more than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against such nonactor." See Treppel, 2005 WL 2086339, at *5 (quoting Schwartz v. Soc'y of the New York Hosp., 199 A.D. 2d 129, 129-30, 605 N.Y.S. 2d 72 (N.Y. App. Div. 1993)). Rather, sufficient facts must be alleged to establish that each nonactor engaged in some form of "independent culpable behavior," such as facts describing a "specific, overt, and improper act on the part of the [] defendants that would have advanced such a conspiracy." American Bldg. Maintenance, 515 F. Supp. 2d at 319; see Treppel, 2005 WL 2086339, at *6 (dismissing conspiracy claims against nonactor defendants, where plaintiff's "perfunctory refrain" that defendants "participated in a conspiracy and concerted actions" failed to establish that these defendants engaged in any "independent culpable behavior" connecting them to the underlying torts); Schwartz, 605 N.Y.S.2d at 73 (dismissing conspiracy claims against nonactor defendants because plaintiff failed to allege any "independent culpable behavior" on their part to link them to the alleged underlying tort).

Here, Plaintiff has not alleged (and cannot in good faith allege) any facts or circumstances constituting any form of "independent culpable behavior" on the part of any one of the Defendants. Specifically, the allegations of Plaintiff's Amended Complaint are that the "Kohnstamm Family Shareholders" collectively entered and effectuated a "conspiratorial scheme" by making the ECRA Filing and by divesting themselves of General Color shares pursuant to a stock redemption program, and also that each of the Defendants "engaged in at least one overt act in furtherance of this conspiratorial scheme." See Am. Compl. ¶¶ 77-80. Plaintiff fails to allege, however, any facts specific to the Defendants in this regard, and indeed, could not in good faith allege any responsibility on the part of any of the Defendants for the

ECRA Filing or the General Color stock redemption program.  As such, without more, Plaintiff's

conclusory allegation of the commission of "overt acts" by Defendants is grossly inadequate to

establish any "independent culpable behavior" on Defendants' part (either separately or

collectively), and is thus incapable of surviving Defendants' Motion to Dismiss.  American Bldg.

Maintenance, 515 F. Supp. 2d at 319; see Brownstone Inv. Group, LLC v. Levey, 468 F. Supp.

2d 654, 661 (S.D.N.Y. 2007) (noting that "to survive a motion to dismiss, a complaint must

contain more than general allegations in support of the conspiracy" and "must allege the specific

times, facts and circumstances of the alleged conspiracy"); see also Iqbal, 490 F.3d at 177

(observing that "bare allegation of conspiracy supported only by an allegation of conduct that is

readily explained as individual action plausibly taken in the actor's own economic interests" is

insufficient to state a viable conspiracy claim); Gmurzynske v. Hutton, 257 F. Supp. 2d 621,

630-31 (S.D.N.Y. 2003) (noting that "mere incantation of the words 'conspiracy' or 'acted in

concert' does not talismanically satisfy" standard for pleading a viable conspiracy claim).

> **D.**    **Plaintiff's Effort to Avoid the Application of New York State Law to Evaluate Whether the Extraordinary Remedy of Piercing the Corporate Veil Is Available Here Is Properly Rejected.**

Plaintiff's opposition brief includes an exhaustive exposition on the purported

applicability of federal common law or New Jersey state law, as opposed to New York state law,

to determine whether piercing the corporate veil is appropriate here on the facts alleged in the

Amended Complaint.  Plaintiff's choice of law analyses in this regard are wholly misguided, but

they are not outcome-determinative in any event, because the conclusory, boilerplate allegations

of Plaintiff's Amended Complaint are completely insufficient to satisfy the elements of veil-

piercing no matter which law is applied.

First, relying on the outdated case of Schiavone v. Pearce, 79 F.3d 248 (2d Cir. 1996) and

its progeny, including Town of Oyster Bay v. Occidental Chem. Corp., 987 F. Supp. 182

(E.D.N.Y. 1997) and Idylwoods Assocs. v. Mader Capital, Inc., 915 F. Supp. 1290 (W.D.N.Y.

1996), as "controlling," Plaintiff declares that CERCLA's broad remedial goals are properly

exalted over state corporate veil-piercing standards, requiring application of federal common law

to the veil-piercing issue. See Pl's. Br. at 13-15. Plaintiff's argument, however, entirely ignores

the U.S. Supreme Court's admonitions articulated two years later in United States v. Bestfoods,

524 U.S. 51, 63 (1998).

In Bestfoods, the Court condemned the creation of expansive federal common law rules

that function to abrogate traditional principles of state corporate law, even when this is done in

the name of furthering the federal interest in promoting CERCLA's broad remedial goal of

having responsible parties bear the costs of site cleanups. Specifically, the Court in Bestfoods

pronounced that the district court erred by having "treated CERCLA as though it displaced or

fundamentally altered" well-established, time-honored, "bedrock" state common law principles

of limited corporate liability. Id. at 70. Thus, while readily acknowledging the importance of

promoting CERCLA's broad remedial goals, the Court specifically denounced the creation of a

"relaxed, CERCLA-specific rule of derivative liability" that would serve to "banish traditional

standards and expectations [under state corporate law] from the law of CERCLA liability." Id.

While the Court in Bestfoods stopped short of *requiring* the application of state law veil

piercing principles in lieu of federal common law, the import of the Court's recalibration of the

balance between state and federal law in the CERCLA context cannot be ignored. Indeed,

consistent with Bestfoods' caution against disrupting longstanding principles of state corporate

law in the name of CERCLA, the Second Circuit recently upheld the application of a Delaware

corporate statute that resulted in the state's CERCLA claims being barred. See Marsh v.

Rosenbloom, 499 F.3d 165, 181 (2d Cir. 2007) (observing that "[w]e strongly presume that state

law should be determinative where 'private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards,' as is the case with most corporate matters.") (quoting <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 98 (1991)); <u>see also</u> <u>New York v. Nat'l Serv. Indus., Inc.</u>, 352 F.3d 682, 685 (2d Cir. 2003) (holding that <u>Bestfoods</u> required reversal of earlier Second Circuit case applying federal common law rule for corporate successor liability under CERCLA in favor of state common law rule on corporate successor liability).  Given the foregoing, application of federal common law to the veil-piercing issue is not, as suggested by Plaintiff, in any way mandated by the law of the Second Circuit.

The three-factor test articulated in <u>United States v. Kimbell Foods</u>, 440 U.S. 715, 728-29 (1979) for evaluating whether to draw from federal or state law further illustrates how the application of federal common law to the veil-piercing issue is not necessitated or at all appropriate here.  The Second Circuit's recent consideration of these factors in the <u>Marsh</u> case is particularly instructive.  <u>See</u> <u>Marsh</u>, 499 F.3d at 182-84.

As to the first <u>Kimbell</u> factor, which evaluates the need for federal uniformity on the issue, the Second Circuit in <u>Marsh</u> was unpersuaded that a uniform federal rule need apply because of the risk that "diverse state rules will frustrate CERCLA's goals." <u>Id.</u> at 182.  Rather, the Court noted that variations in rules among states do not prove a need for uniformity, so long as a given standard is applied evenhandedly to particular disputes.  <u>Id.</u> at 182-83. As to the second <u>Kimbell</u> factor, examining whether the application of state law would in fact frustrate federal objectives, the Court in <u>Marsh</u> noted that "CERCLA recognizes that recovery will not always be possible and does not mandate recovery from every person with any connection to a contaminated site." <u>Id.</u> at 183; <u>see also</u> <u>Commander Oil Corp. v. Barlo Equip. Corp.</u>, 215 F.3d 321, 327 (2d. Cir. 2000) (likewise observing that "neither does CERCLA automatically assign

liability to every party with any connection to a contaminated facility"). That New York veil-piercing law would defeat Plaintiff's attempt to impose liability on Defendants here by piercing the corporate veil simply does not suggest a conflict with federal policy sufficient to require the application of federal common law. See Marsh, 499 F.3d at 183. Finally, as to the third Kimbell factor, which considers the extent to which a federal rule would disrupt commercial relationships predicated on state law, the Marsh Court noted that this would "easily" occur if federal law were applied, given that "[s]hareholders have the expectation of limited liability under state law when they invest in corporations." Id. In this regard, the Court specifically cautioned against "[h]anging a cloud of perpetual uncertainty over . . . former shareholders . . . in the name of CERCLA." Id.; see Nat'l Serv. Indus., 460 F.3d at 208 ("Kimbell Foods factors appear to favor the absorption (non-displacement) of state law").

As such, the Kimbell factors do not, as Plaintiff claims, militate in favor of the application of federal common law, but rather support the conclusion that New York state law principles of veil-piercing should control. As set forth in detail in Defendants' initial brief, Plaintiff cannot pierce the corporate veil under New York law under any circumstances.[11]

Moreover, even if, as Plaintiff argues, federal common law were to control the issue of veil piercing, Plaintiff still cannot do so as a matter of law, given the dearth of facts pled by

---

[11]    The three cases relied on by Plaintiff in support of veil-piercing under New York law are easily distinguished from the present case. First, in Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88 (2d Cir. 1999), the Court prohibited plaintiff from hiding behind the corporate veil to avoid arbitrating with non-signatories to an arbitration agreement where the plaintiff had treated itself, a signatory, and the non-signatories as one and the same in the complaint. Moreover, the cases of In re Weinstein's Estate, 25 A.D.2d 776 (2d Dep't 1966) and Musico v. Champion Credit Corp., 764 F.2d 102 (2d Cir. 1985) both stand for the limited proposition that the corporate veil between an estate and a wholly-owned corporation may be disregarded where the fiduciaries of the estate and the corporation's management are one and the same, as an exception to the general rule that a corporation may not pierce its own veil.

Plaintiff in the Amended Complaint. "Federal common law in the Second Circuit involves a two-pronged test for piercing the corporate veil: the party to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded . . . the corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own." Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007); see also Am. Cash Card Corp. v. AT&T, 210 F.3d 354, *1 n.1 (2d Cir. Apr. 6, 2000). Plaintiff's Amended Complaint fails to allege that the minority shareholder Defendants took any action to dominate or control H. Kohnstamm, nor does it allege that any Defendant treated H. Kohnstamm as their alter ego for purposes of perpetrating a fraud. Thus, even if federal common law applies, Plaintiff's Amended Complaint fails to make the necessary allegations to justify any invocation of the extraordinary equitable relief of piercing the corporate veil.

Finally, even if New Jersey law controls, as argued in the alternative by Plaintiff, New Jersey law does not support veil-piercing here. In New Jersey, as in New York, the remedy of piercing the corporate veil is reserved only for "extraordinary circumstances." See A.I. Credit Consumer Discount Co. v. Premiere Foods, Inc., 2007 WL 3256733, at *4 (D.N.J. Nov. 5, 2007). Also akin to New York law, to pierce the corporate veil under New Jersey law, Plaintiff must show that: "(1) the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent, and (2) the parent has abused the privilege of incorporation by using the subsidiary to perpetrate fraud or injustice, or otherwise circumvent the law." Id. Moreover, the party seeking to pierce the corporate veil under New Jersey law must demonstrate a nexus between the alleged domination and the alleged harm caused. Id. Here, Plaintiff has failed to allege that the minority shareholder Defendants "so dominated" H. Kohnstamm that there was "no separate existence," nor has Plaintiff plausibly alleged that the minority

shareholder Defendants had any personal involvement in perpetrating any alleged fraud.  Thus,

Plaintiff's veil-piercing claim fails as a matter of law even if New Jersey law governs.

Notably, the cases cited by Plaintiff in its opposition brief to argue that self-piercing is

permissible under New Jersey law do not dictate a different result, as they are plainly limited to

their unique facts in bankruptcy settings, in which the corporation seeking to pierce it's own

corporate veil was bankrupt or otherwise defunct.  See In re Buildings by Jamie, Inc., 230 B.R.

36 (D.N.J. 1998) (recognizing that although, "it may seem strange to allow a corporation to

pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by

the corporate fiction, or an involuntary tort creditor," a trustee in bankruptcy "act[s] as a

representative of the estate by marshalling assets for the benefit of creditors in general . . . .")

(quoting Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228 (3d Cir. 1994).

As a final note, Plaintiff's contention that "NJDEP effectively pierced the corporate veil"

in its determinations made in response to H. Kohnstamm's ECRA Filing, see Pl.'s Br. at 26-27,

is a red herring properly disregarded by this Court.  As an initial matter, the NJDEP did not make

any evaluation of the specific factors relevant to the veil-piercing analysis.  And even if it had,

under New York law, determinations of administrative agencies cannot be accorded any

preclusive effect in subsequent litigation unless they are "quasi-judicial," they involve an

"identical" issue, and they are issued after a hearing affording a "full and fair opportunity to

contest th[e] issue."  See Jeffreys v. Griffin, 801 N.E.2d 404, 769 N.Y.S.2d 184, 188 (N.Y.

2003).  An agency decision is only "quasi-judicial" if the administrative procedures used in

reaching it were "sufficient both quantitatively and qualitatively" for the facts asserted to be

"adequately tested" and the issue to be "fully aired."  Id.  Here, the NJDEP's determination in

response to the ECRA Filing, which merely identified certain facts supporting the non-

applicability of ECRA to the 1988 Transaction, possesses none of these requisite characteristics. As such, NJDEP's determination has no bearing on the issue of whether Plaintiff is entitled to the extraordinary remedy of piercing its own corporate veil here for the purpose of asserting environmental cleanup liability against Plaintiff's former minority shareholders.

### E.   Plaintiff's Arguments Seeking to Avoid the Application of Collateral Estoppel Are Meritless, And Plaintiff Is Properly Foreclosed by the Result in the New Jersey Action from Re-Litigating The Veil-Piercing Issue Here.

Plaintiff disputes that it is collaterally estopped from asserting any claims based on veil-piercing as a result of the New Jersey Action, in which the Court expressly considered and rejected Plaintiff's veil-piercing claims in ruling on a motion to dismiss on grounds of lack of personal jurisdiction. See Pl.'s Br. at 33-35.

First, Plaintiff argues that the existence of a CERCLA claim in this matter, which did not exist in the New Jersey Action, renders the veil-piercing issue in the two cases distinguishable for purposes of the application of collateral estoppel. Id. at 33-34. As set forth above, however, the legal standards applicable to Plaintiff's veil-piercing claims here are not materially different from those applied by the Court in the New Jersey Action in connection with determining the Court's personal jurisdiction, and are wholly unaltered by the fact that Plaintiff has added a new claim here based on CERCLA.

Next, Plaintiff argues that Defendants' collateral estoppel argument "hinges upon dicta statements made at oral argument." Id. at 34. In so arguing, Plaintiff conveniently ignores the fact that its own counsel specifically argued in the New Jersey Action that "this [New Jersey] Court has the authority to exercise jurisdiction and to have its law applied in the circumstance of piercing the veil." See 2/3/06 Hearing Tr. at 19-21 (Lampert Dec., Ex. A). The Court in the New Jersey Action explicitly rejected that argument in making its ruling, finding that Plaintiff

had failed to establish any basis for piercing its own corporate veil. Id. at 32-33. As such, this ruling cannot properly be characterized as mere dicta.

For the same reason, Plaintiff's contention that the veil piercing issue was not "'essential' to the New Jersey Court's judgment," see Pl.'s Br. at 34, must also fail. Plaintiff expressly based its claim of personal jurisdiction in the New Jersey Action on veil-piercing, and the defendants therein responded by challenging the veil-piercing claim, as well as by demonstrating the lack of minimum contacts between each defendant and the State of New Jersey. In granting defendants' motion to dismiss for lack of personal jurisdiction, the Court in the New Jersey Action resolved each issue pertaining to that motion in defendants' favor -- including the veil-piercing theory on which Plaintiff expressly relied in that case as in this one. The New Jersey Court held that there were "no facts" and "no proof" supporting Plaintiff's alter ego claim or that "the shareholders abused the corporate form to . . . perpetrate . . . a fraud , or otherwise to circumvent the law." See 2/3/06 Hearing Transcript at 32-33 (Lampert Dec., Exhibit A); Amended Order of March 22, 2006 (Lampert Dec., Exhibit B).

Finally, Plaintiff urges this Court to reject Defendants' collateral estoppel argument by following the decision in Star Capital v. Nynex Corp., 1993 WL 350016 (S.D.N.Y. Sept. 9, 1993). See Pl.'s Br. at 34-35. Plaintiff overlooks, however, that the Star Capital decision was extensively criticized and expressly rejected by the Tenth Circuit in the case of Matosantos Comm. Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1210 n.5 (10th Cir. 2001) (see Defs.' Mem at 19); see also Cartesian Broadcasting Network v. Robeoco USA, LLC, 809 N.Y.S.2d 480 (Table), 2005 WL 3442964 (Sup. Ct. N.Y. Cty. June 6, 2005) (citing Matosantos and applying

collateral estoppel to ruling on issue of respondeat superior entered by Massachusetts court in connection with grant of motion to dismiss for lack of personal jurisdiction).[12]

## III.    CONCLUSION

For each of the foregoing reasons, in addition to those set forth in Defendants' initial Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint of Plaintiff Sensient Colors, Inc. in its entirety and dismiss each of Plaintiff's claims against Defendants with prejudice.

SAUL EWING LLP
Attorneys for Defendants Peter L. Kohnstamm
and Elizabeth K. Ogden

By:_____/s/_____
    David C. Kistler, Esq.

    John F. Stoviak, Esq.
    Cathleen M. Devlin, Esq.
    Saul Ewing LLP
    1500 Market Street
    Centre Square West, 38th Floor
    Philadelphia, PA  19102
    (215) 972-5056

---

[12]    Plaintiff's related contention that "without jurisdiction, any statements made by the New Jersey Court are not subject to collateral estoppel," Pl.'s Br. at 35, is undermined by Matosantos and the other cases and authorities cited by Defendants.  Indeed, even if the New Jersey Court lacked personal jurisdiction over the Defendants, that Court had "adjudicatory authority" over *Plaintiff* and therefore had the authority to resolve the issue of personal jurisdiction on the merits, including rejecting Plaintiff's veil-piercing theory. Given this, Plaintiff's reliance on Baker by Thomas v. GM Corp., 522 U.S. 22 (1998) and Scardace v. Mid Island Hosp., Inc., 21 A.D.3d 363 (2d Dep't 2005) is unavailing.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SENSIENT COLORS INC., | : | Case No.  07 CIV 7846 (LAP) |
|  | : |  |
| Plaintiff, | : | CIVIL ACTION |
|  | : |  |
| vs. | : | **DECLARATION OF** |
|  | : | **DAVID C. KISTLER** |
| ABBY F. KOHNSTAMM; PETER L. | : |  |
| KOHNSTAMM; SARAH F. | : | (Filed Electronically) |
| KOHNSTAMM; ELIZABETH K. | : |  |
| OGDEN; RICHARD L. OGDEN; | : |  |
| THOMAS H. OGDEN; JOHN DOE | : |  |
| INDIVIDUALS 1-20 (fictitious | : |  |
| names); and ABC COMPANIES 1-20 | : |  |
| (fictitious names), | : |  |
|  | : |  |
| Defendants. | : |  |

DAVID C. KISTLER hereby declares pursuant to 28 U.S.C. § 1746:

1.       I am an associate with the law firm of Saul Ewing LLP, attorneys for Defendants Peter L. Kohnstamm and Elizabeth K. Ogden.  As such, I am fully familiar with the facts set forth herein.

2.       Attached hereto are true and correct copies of the following documents:

Exhibit A:       Excerpts from the Agreement and Plan of Reorganization By and Between Universal Foods Corporation, H. Kohnstamm & Co., Inc., General Color Company, and the Shareholders of the Company Who Have Executed This Agreement, dated December 11, 1987, (the "1988 Transaction Agreement").

I declare under penalty of perjury that the foregoing is true and correct.

                                                          _____/s/_____
                                                          David C. Kistler

Dated: January 15, 2008
Philadelphia, Pennsylvania

# Exhibit A

12/09/87

AGREEMENT AND PLAN OF REORGANIZATION
BY AND BETWEEN
UNIVERSAL FOODS CORPORATION
(a Wisconsin corporation) ("Universal Foods"),
H. KOHNSTAMM & CO., INC.
(a New York corporation) (the "Company"),
GENERAL COLOR COMPANY
(a New Jersey corporation) ("General Color"),
AND THE SHAREHOLDERS OF THE COMPANY
WHO HAVE EXECUTED THIS AGREEMENT
(the "Selling Shareholders")

December 11, 1987

12/09/87

## AGREEMENT AND PLAN OF REORGANIZATION

AGREEMENT AND PLAN OF REORGANIZATION (the "Agreement"), dated as of December 11, 1987, by and between UNIVERSAL FOODS CORPORATION, a Wisconsin corporation ("Universal Foods"), H. KOHNSTAMM & CO., INC, a New York corporation (the "Company"), GENERAL COLOR COMPANY, a New Jersey corporation ("General Color"), and the shareholders of the Company who have executed this Agreement on the signature pages hereof personally or by power of attorney (individually referred to herein as "Selling Shareholder" and collectively as "Selling Shareholders").

W I T N E S S E T H :

WHEREAS, Universal Foods is a duly organized and incorporated Wisconsin corporation.

WHEREAS, the Company is a duly organized and incorporated New York corporation; its authorized capital stock consists of 10,000 shares of preferred stock, $100 par value ("Company Preferred Stock"), of which 2,000 shares are duly and validly issued and 2,000 shares are outstanding on the date hereof; and 3,000,000 shares of common stock, $2 par value ("Company Common Stock"), of which 1,057,752 shares are duly and validly issued and 1,012,292 shares are outstanding and entitled to vote on the date hereof (the Company

indemnified party in connection with the defense against
such claim or litigation, and for all losses, damages and
expenses suffered or incurred by the indemnified party with
respect to the falsity or alleged falsity or the breach or
alleged breach of any representation, warranty, covenant or
agreement made herein (whether or not arising out of the
claim of a third party).

(f)  If indemnification is due Universal Foods as
the indemnified party pursuant to Paragraph 11.0, 11.2 or
11.3 (and) the claim is based, in whole or in part, on (i)
fraud on the part of the Company or a Selling Shareholder
herein, (ii) the falsity or breach of a representation or
warranty set forth in Paragraph 2.0, (iii) an intentional or
deliberate violation or breach of any covenant or agreement
made by the Company or a Selling Shareholder herein, (iv) a
claim by a third party made within one (1) year after the
Closing Date (except for Ecolab, Inc. for which the applicable
time period shall be five (5) years after the Closing Date)
or (v) a claim made within five (5) years after the Closing
Date with respect to environmental or health matters and
relating to the Camden, New Jersey real property being trans-
ferred by the Company to General Color prior to the split-
up, then in any such event Universal Foods may at its option
file a claim against the escrow fund held pursuant to the
Escrow Agreement and/or seek indemnification directly from

-91-

the Selling Shareholders; provided, however, that Universal
Foods may not assert its right to indemnification against
the escrow fund for any claim under (i) above more than five
(5) years after the Closing Date. "Fraud" as that term is
used in this Article XI shall mean an intentional perversion
of the truth, an omission to state a fact or facts which
operates as a perversion of the truth or a reckless disregard
for the truth or falsity of a statement made herein. Under
all other circumstances where indemnification is due Universal
Foods pursuant to Paragraph 11.0, 11.2 or 11.3, Universal
Foods' sole and exclusive remedy for damages shall be to
file a claim against the escrow fund held pursuant to the
Escrow Agreement, and any claim other than a claim identified
in (i), (ii), (iii), (iv) or (v) above must be asserted prior
to the second anniversary of the Closing Date. Any dispute
between the parties hereto with respect to the provisions of
the escrow fund shall be resolved through arbitration as
provided in the Escrow Agreement.

11.1  S-4 Prospectus/Registration Statement

(a)  To the extent permitted by law, Universal
Foods will indemnify and hold harmless each Selling Share-
holder, any underwriter (as defined in the Securities Act of
1933, as amended (the "1933 Act")) for any such Selling Share-
holder, and each person, if any, who controls such underwriter
within the meaning of the 1933 Act, against any losses,

-92-

H. KOHNSTAMM & CO., INC.
("Company")


By:_____
　　　　Its:_____

[Corporate Seal]


Attest:_____
　　　　　Its:_____


GENERAL COLOR COMPANY
("General Color")


By:_____
　　　　Its:_____

[Corporate Seal]


Attest:_____
　　　　　Its:_____


SELLING SHAREHOLDERS

_____(SEAL)　　_____(SEAL)

_____(SEAL)　　_____(SEAL)

_____(SEAL)　　_____(SEAL)

_____(SEAL)　　_____(SEAL)

*_____(SEAL)　　_____(SEAL)

*_____(SEAL)　　_____(SEAL)

*_____(SEAL)　　_____(SEAL)

*By: _____(SEAL)

　　　Attorney-in-Fact

UNIVERSAL FOODS CORPORATION
("Universal Foods")


By:_____
    Its:_____

[Corporate Seal]

Attest:_____
       Its:_____


H. KOHNSTAMM & CO., INC.
("Company")


By: _Paul L. Kohnstamm____
    Its: _Chairman of__

[Seal]

Attest: _____
        Its: _Secretary__


GENERAL COLOR COMPANY
("General Color")


By: _Paul L. K_____
    Its: _Presid____

Attest: _____
        Its: _Secreta___

[Corporate Seal]

**SAUL EWING LLP**
A Delaware LLP
750 College Drive East, Suite 100
Princeton, NJ  08540
(609) 452- 3100
Attorneys for Defendants Peter L. Kohnstamm and Elizabeth K. Ogden

|  |  |  |
|---|---|---|
| SENSIENT COLORS INC., | : | UNITED STATES DISTRICT COURT |
|  | : | SOUTHERN DISTRICT OF NEW YORK |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | Case No.  07 CIV 7846 (LAP) |
|  | : |  |
| ABBY F. KOHNSTAMM; PETER | : | CIVIL ACTION |
| L. KOHNSTAMM; SARAH F. | : |  |
| KOHNSTAMM; ELIZABETH K. | : | Declaration of Service |
| OGDEN; RICHARD L. OGDEN; | : |  |
| THOMAS H. OGDEN; JOHN DOE | : | (Filed Electronically) |
| INDIVIDUALS 1-20 (fictitious | : |  |
| names); and ABC COMPANIES 1-20 | : |  |
| (fictitious names), | : |  |
|  | : |  |
| Defendants. | : |  |

I, DAVID C. KISTLER, hereby declare:

      1.     I am an associate with the law firm of Saul Ewing LLP, attorneys for

Defendants Peter L. Kohnstamm and Elizabeth K. Ogden.  As such, I am fully familiar

with the facts set forth herein.

      2.     On January 15, 2008, I served Mary M. Chang, Esquire,

Bryan Cave LLP, 290 Avenue of the Americas, New York, NY 10104, counsel for

Plaintiff Sensient Colors, Inc., and Robert L. Feltoon, Esquire, Conrad, O'Brien, Gellman

& Rohn, P.C., counsel for Defendants Abby F. Kohnstamm and Sarah F. Kohnstamm,

1515 Market Street, 16th Floor, Philadelphia, Pennsylvania 19102, by overnight delivery,

with the Memorandum of Law of Certain Defendants in Reply to Plaintiff's Opposition

to Defendants' Motion to Dismiss the Amended Complaint; and Defendants'

Certification of David C. Kistler with accompanying Exhibit.

I declare under penalty of perjury that the foregoing is true and correct.


_____/s/_____
David C. Kistler (DK 8496)

Dated: January 15, 2008
Philadelphia, Pennsylvania